**STATE of Missouri, Respondent,**

v.

**Roy Edward SNIPES, Appellant.**

**No. 56553.**

Supreme Court of Missouri, Division No. 1.

Feb. 22, 1972.

Motion for Rehearing or to Transfer to Court En Banc Denied April 10, 1972.

John C. Danforth, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

Edward Snipes, in pro per.

HOLMAN, Presiding Judge.

Defendant was charged with the offense of driving a motor vehicle while in an intoxicated condition. See § 564.440.[1] He was convicted on a trial in the magistrate court and appealed to the circuit court. At a trial in that court he was again found guilty and the jury fixed his punishment at a fine of $100 and imprisonment in the county jail for a period of 30 days. He has appealed to this court. We have appellate jurisdiction of this misdemeanor appeal because one of defendant's contentions involves the construction of the "due process" provisions of the State and Federal Constitutions. See Art. V, § 3, and Art. I, § 10, Mo.Const.1945, Fourteenth Amendment, U.S.Const., and Richman v. Richman, Mo.Sup., 350 S.W.2d 733. We affirm.

The points raised require only a brief statement of facts. On July 5, 1970, defendant's car was stopped on Highway 70 near Columbia, by Highway Patrol officers operating a radar unit which had indicated that the car was being driven at a speed of 81 m. p. h. After the officers had observed defendant he was arrested for driving while intoxicated. He was taken to the Columbia police headquarters for an intoximeter test, which is a breath test to calculate the alcohol content of the blood. He refused to take that test and requested that a blood sample be drawn.

Defendant was taken to Boone County Hospital where that was done and the blood was sent to the Highway Patrol Laboratory to be analyzed.

There was an abundance of evidence to support the submission. Three officers testified that from their observation of defendant they were of the opinion that he was intoxicated. The patrol chemist testified that the blood sample tested .158 percent alcohol by weight, and that from his observation of many tests upon various persons it was his opinion that a person with such an alcohol blood content would be intoxicated. Dr. Jackson, a psychiatrist called by defendant, testified that intoxication could be measured by physical reactions as well as by chemical methods, and that the body builds a tolerance for alcohol. He stated, however, that in his opinion a person with .15 percent alcohol blood content would be intoxicated and that a person would never build a tolerance so that he would not be intoxicated at that point.

Defendant testified that he had drunk five "beers" but that he was confident he was not intoxicated. He testified further that "At the time we were in the Columbia police station, I spoke with Officer Wonneman in regard to the fact that I wanted to see a physician at that time. He asked me why I wanted to see a physician, if I was injured, and why I wanted to see one. I told him I wanted to see one just to have him examine me for the purpose of intoxication . . . to check my awareness and my agility, my adeptness, and so forth. And he in turn, in my presence, at the time Officer Halford came in and sat down, told Officer Halford that I had requested to see a physician. Officer Halford * * * said, 'Well, we have to get this blood test and then we'll take care of that later.' I assumed by that that he meant seeing a physician. However, I never did see a physician that evening. I was taken straight from Boone County Hospital down to Boone County jail." His testimony further indicates that he requested to be

1. Statutory references are to RSMo 1969, V.A.M.S.

taken to the University Medical Center for the examination, and that after the blood sample was taken and he was returned to the sheriff's office he attempted to again make the request but was told to keep quiet.

■ Defendant, a layman, tried the case without the assistance of an attorney. Prior to trial he filed a motion to suppress based upon the contention that he had been denied due process because he was not permitted to have a physical examination by a person of his own choosing at his own expense. The court heard evidence and subsequently overruled the motion. While we think a motion to dismiss or quash would have been more appropriate we rule that the defendant's motion was sufficient to call the point to the attention of the trial court.

■ Defendant's first point on this appeal is that he was denied due process by the refusal of the police to assist him in obtaining evidence to be used in his defense by not permitting him to have the examination heretofore mentioned. In addition to the constitutional provisions, he has cited (but has not developed) § 564.441 which provides that after the breath test is taken, "[t]he person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a test in addition to any administered at the direction of a law enforcement officer. The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test taken at the direction of a law enforcement officer." It is our view that that section will not aid defendant. He refused the breath test and the blood test was then taken at his request. That was a substantial compliance with the privilege granted by the statute. Moreover, the statute provides that the failure to obtain the additional test shall not preclude admission of evidence relating to the test taken. If defendant is to prevail on his

contention it must be upon general constitutional due process grounds.

The question presented is one of first impression in this state. However, the basic principle has been discussed and decided in a number of cases in other states. In In re Martin, 58 Cal.2d 509, 24 Cal.Rptr. 833, 374 P.2d 801, the petitioner had been arrested for driving while intoxicated. At time of booking he requested a blood test which was denied. However, he was released on bail and immediately sought to procure such a test. Being advised that the private laboratories were closed he went to a municipal hospital where he was told that he could not have a blood test unless authorized by the police department. The department declined to give the authorization. He went to another hospital where the same thing occurred. After conviction he sought habeas corpus. In granting his discharge the court stated: "In the case now engaging our attention petitioner was released within minutes after his 'booking' at the police station. No meritorious claim can be made that he could not, at that time, have obtained a timely sampling if unhampered. Moreover, police officers are not required to take the initiative or even to assist in procuring any evidence on behalf of a defendant which is deemed necessary to his defense. * * * But in no event can duly constituted authority hamper or interfere with efforts on the part of an accused to obtain a sampling of his blood, without denying to him due process of law. * * * A refusal by the police under the foregoing circumstances is analogous to a suppression of evidence and violative of due process of law." 24 Cal.Rptr. at 835, 374 P.2d l. c. 803.

In People v. Burton, 13 Mich.App. 203, 163 N.W.2d 823, defendant had been arrested for driving while intoxicated. The police did not administer any chemical test but advised defendant of his right to a blood test by a person of his own choosing. He gave the officer the name of a physician and the officer agreed to call him. The physician was not in and the officer left

word for him to call back. Apparently he never called and the officer did nothing further. Defendant was convicted and on appeal contended that he had been denied due process. In reversing the conviction the court stated: "It is undisputed * * * that defendant was told he could have a blood alcohol test given by a person of his own choosing, and the police agreed to call his doctor. * * * At the time defendant was taken to the lockup, he had acted to protect his right to a blood alcohol test. * * * There is respectable authority for the proposition that a person is deprived of due process of law when he is denied a reasonable opportunity, under the circumstances, to obtain a timely sample of blood at his own expense. See State v. Munsey (1956), 152 Me. 198, 127 A.2d 79; In re Newbern (1959), 175 Cal.App.2d 862, 1 Cal.Rptr. 80, 78 A.L.R.2d 901. * * * We hold that the failure of the police to inform the defendant in a timely fashion that his physician was not contacted deprived him of a reasonable opportunity to gather competent evidence for his defense, as contemplated by the statute. This error cannot be remedied by a new trial." 163 N.W.2d l. c. 825.

■ The purpose of due process is to prevent fundamental unfairness, and one of its essential elements is the opportunity to defend. Where the police do not administer a test, or cause one to be made, to determine the alcohol content of the blood they must give a defendant the opportunity to make a reasonable effort to obtain such a test. We rule, however, that the due process provisions should not be construed as requiring more than was done in this case. Here, defendant was given a requested blood test and due process did not require that the police convey him to a hospital so that a physician could determine by physical observation whether he was intoxicated. Defendant admits he was given the opportunity to make a telephone call and hence he could have called a physician and requested that he come to the

jail and make the examination. We rule this point against defendant.

■ The remaining point is that the court erred in refusing to give defendant's offered instructions 1, 2, 3, 4, 5, 7, and 8. Instruction No. 1 simply stated that the jury should not assume guilt because defendant was on trial. This subject was adequately covered by another instruction which was given.

■ Instructions 2, 3, 4, and 5 are all very brief instructions dealing with the subjects of presumptions, assumptions, and prima facie evidence. There was no occasion for giving instructions of that type because the other instructions did not advise the jury concerning the provisions of § 564.442(3), which states that if the analysis of the blood shows that "there was fifteen-hundredths of one percent or more by weight of alcohol in the person's blood, this shall be prima facie evidence that the person was intoxicated at the time the specimen was taken." Defendant, on cross-examination of two witnesses, brought out that a person with a test of .15 percent alcohol is presumed to be intoxicated, but such did not make it necessary to instruct on the subject. Moreover, these instructions are cautionary in nature and the giving or refusal of such instructions is discretionary with the court. We find no abuse of such discretion in this case. State v. Hinojosa, Mo.Sup., 242 S.W.2d 1.

■ Instructions 7 and 8 related to circumstantial evidence. This subject was covered in another instruction given by the court, although such was unnecessary because this is not a circumstantial evidence case. There was a great deal of direct evidence tending to prove defendant's guilt. There was no error in refusing the instructions in question.

The judgment is affirmed.

All concur.