STATE of South Dakota, Plaintiff and Appellee,

v.

Barbara Jo ZOSS, Defendant and Appellant.

No. 14485.

Supreme Court of South Dakota.

Considered on Briefs Oct. 25, 1984.

Decided Jan. 9, 1985.

Mark A. Moreno, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Asst. Atty. Gen., Pierre, on brief.

Nancy J. Turbak, Watertown, for defendant and appellant.

WUEST, Acting Justice.

This is an appeal from a judgment of conviction for driving while under the influence (DWI), in violation of SDCL 32–23–1. We affirm.

On April 24, 1983, A South Dakota State Trooper observed an automobile, driven by Barbara Jo Zoss (appellant), traveling twenty-five m.p.h. in a fifty-five m.p.h. zone approximately four miles west of Watertown, South Dakota. The vehicle was drifting back and forth from the left-hand lane to the shoulder of the road. The officer stopped appellant and, after she failed six field sobriety tests, he arrested her for DWI. After the officer advised appellant of the implied consent law and the *Miranda* warnings, appellant indicated she understood her *Miranda* rights but did not respond to the implied consent law. She was subsequently taken to the Codington County Detention Center in Watertown, where she was again read the implied consent law and was asked to take a chemical breath test. The officer further explained the implied consent law to her and advised her that she was being requested to submit to a breath test. The officer also informed appellant she could have her own test at her own expense after the requested test was administered. Thereafter, appellant made statements questioning the accuracy of the breath test and when asked whether she would submit to its administration she declined but requested a blood test. Initially, the officer obtained directions to a local hospital where appellant could receive a blood alcohol test; however, after conferring with another officer, the trooper informed appellant that she was not entitled to the blood test because she refused to take the requested breath test.

Appellant was convicted of DWI in violation of SDCL 32–23–1, and with having two prior convictions for DWI within the preceding four years, in violation of SDCL 32–23–4 and 32–23–4.1. Appellant contends that she was denied her constitutional rights to due process and a fair trial when she was not allowed to have the blood test of her choice administered. Other states have so held. *See Smith v. Cada,* 115 Ariz. 510, 562 P.2d 390 (1977). The trial court, however, held that under South Dakota law the choice of tests to determine the blood alcohol content of a person arrested for DWI is for the law enforcement authorities and that, inasmuch as appellant declined the breath test requested by the officers involved, she was not entitled to another test. We agree.

At the time of appellant's arrest, SDCL 32–23–15 stated:

The person tested ... shall be permitted to have a physician, laboratory technician, registered nurse, physician's assistant or medical technologist of his own choosing administer the chemical analy-

sis *in addition* to the one administered at the direction of the law enforcement officer. (Emphasis added.)

■ Under this statute, the officer chooses the type of test initially administered to determine blood alcohol content, and not the arrestee. *State v. Birney*, 85 S.D. 1, 176 N.W.2d 475 (1970).

We have dealt with cases factually analogous to the instant action involving drivers' license revocation proceedings. *See Schlenker v. South Dakota, Etc.*, 318 N.W.2d 351 (S.D.1982); *Blow v. Commissioner of Motor Vehicles*, 83 S.D. 628, 164 N.W.2d 351 (1969); *Beare v. Smith*, 82 S.D. 20, 140 N.W.2d 603 (1966); *Stensland v. Smith*, 79 S.D. 651, 116 N.W.2d 653 (1962). However, whether law enforcement officials violated appellant's constitutional rights to due process and a fair trial by denying her request for a blood test after she refused the requested breath test are issues of first impression in our state.

■ Appellant contends that the officers' conduct violated the principle test set out by the United States Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Under the *Brady* rule, the State is required by the due process clause of the United States Constitution, Amendment 14, and South Dakota Constitution, Article VI, § 2; to give a defendant, upon that defendant's request, access to any material evidence in the State's possession that is favorable to the accused. In discussing *Brady*, and similar due process cases, the United States Supreme Court recently stated:

Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense. To safeguard that right, the Court has developed "what might loosely be called the area of constitutionally guaranteed access to evidence." *United States v. Valenzuela-Bernal*, 458 US 858, 867, 73 L Ed 2d 1193, 102 S Ct 3440 [3446] (1982). Taken together, this group of constitutional privileges delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system. *California v. Trombetta*, —— U.S. ——, ——, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413, 419–20 (1984).

There was no assurance the blood test would be exculpatory. It may have been to the contrary. The same may be said of the requested breath test. If she had wanted possible exculpatory evidence, she could have consented to the breath test which may have been exculpatory and still had a chance of getting a possible exculpatory blood test. There is nothing fundamentally unfair in this procedure, nor did it deny her a "meaningful opportunity to present a complete defense." In fact, she would have had two chances at getting possible exculpatory evidence.

We have held in *State v. Wilde*, 306 N.W.2d 645 (1981), that to comply with the *Brady* rule, the evidence must not only be withheld, but material and exculpatory. Here, the State did not withhold any exculptory evidence. The appellant withheld the evidence (her breath) under the implied consent law, not the State.

The judgment of the trial court is affirmed.

FOSHEIM, C.J., and WOLLMAN and MORGAN, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

I dissent. The majority opinion's ultimate conclusion is that the motor patrolman did not violate this appellant's constitutional rights to due process and a fair trial by denying her a *reasonable opportunity* to have a blood test. I adopt these authorities, all contrary to the majority stance, that the arrestee be given an independent test at his or her request and expense: Annot., 78 A.L.R.2d 905 (1961);

*Brown v. Municipal Court of Los Angeles Judicial District,* 86 Cal.App.3d 357, 150 Cal.Rptr. 216 (1978); *In re Newbern,* 175 Cal.App.2d 862, 1 Cal.Rptr. 80 (1959); *State v. Munsey,* 152 Me. 198, 127 A.2d 79 (1956); *Commonwealth v. Alano,* 388 Mass. 871, 448 N.E.2d 1122, 1126 (1983); *People v. Burton,* 13 Mich.App. 203, 163 N.W.2d 823 (1969); *Scarborough v. State,* 261 So.2d 475 (Miss.1972), *cert. denied,* 410 U.S. 946, 93 S.Ct. 1353, 35 L.Ed.2d 613; *State v. Snipes,* 478 S.W.2d 299 (Mo.1972), *cert. denied,* 409 U.S. 979, 93 S.Ct. 332, 34 L.Ed.2d 242; *City of Kettering v. Baker,* 42 Ohio St.2d 351, 354, 328 N.E.2d 805 (1975); *State v. Lewis,* 266 S.C. 45, 48–49, 221 S.E.2d 524 (1976); *City of Blaine v. Suess,* 93 Wash.2d 722, 728, 612 P.2d 789 (1980); *City of Tacoma v. Heater,* 67 Wash.2d 733, 409 P.2d 867 (1966).

This is a case of first impression in this state and both parties so concede in their briefs. Thus, past precedent in this Court does not exist for the set of facts before us. Let us not, then, be married to cases such as *Schlenker,* cited in the majority opinion. This is uniquely a different case. This is not a civil hearing before an agency to revoke a driver's license; it is a criminal case for which appellant may be imprisoned. We must raise our vision and minds past implied consent cases and upward to the Constitution. Then, our reasoning shall peak.

Unfortunately, the majority opinion fails to set forth the true facts of this case which are critical in our decision to the issue before us. And the issue before us is whether or not this appellant was denied a reasonable opportunity to have a blood test.

This was a court trial at Watertown. There was a "Stipulation of Facts" by the parties and without those stipulated facts, the reader cannot understand the true meaning and background of this case and its holding. Thus, I set forth in extenso those stipulated facts:

On April 24, 1983, State Trooper McManus arrested Barbara Jo Zoss for driving while under the influence of alcohol, violating SDCL 32–23–1. She was taken into custody and transported to the Codington County Detention Center in Watertown. While at the Detention Center, the trooper asked Ms. Zoss to take a breath test and read her the implied consent advisory. Ms. Zoss expressed concern about the accuracy of a breath test and requested a blood test. When the trooper asked if she wanted to submit to the breath test, she answered, "No." The trooper asked if he should consider that a refusal, which began a discussion between them about the implications if she declined the breath test.

Trooper McManus said that if she refused the breath test, he would take her to the hospital for a blood test, and that the only difference would be that she could have her drivers license revoked if she refused the breath test. The trooper said, "I can't see why you'd want to take your own blood test and refuse this one. If that's the way you want to do it, fine. We can write up a refusal and submit it to the state, and take you over to the hospital for a blood test...." Ms. Zoss responded by again requesting a blood test. The trooper appeared ready to take her to the hospital for such a test when a Watertown police officer interrupted and left the room with the trooper. Upon the trooper's return, he refused to take Ms. Zoss for a blood test, and she was informed that she had no right to such a test. She was processed and placed in a jail cell, from where she renewed her request for a blood test a short time later. Again told she could not have such a test, Ms. Zoss remained in jail until she was discharged from custody several hours later.

During the course of this trial, the arresting trooper acknowledged that he had refused to allow Ms. Zoss to take a blood test. Per the transcript, a blood test would have been reasonably available. The transcript vividly reveals that Ms. Zoss repeatedly requested a blood test. There can be no doubt that this trooper told Ms. Zoss that he would take her to a nearby hospital

for a blood test and initiated arrangements to accomplish the blood test. Later, he refused to do so apparently acting on the advice of a police officer at the jail.

The implied consent warning given at the time of Zoss' arrest contained, inter alia, the following:

1. I have arrested you for driving or being in actual physical control of a vehicle while under the influence of alcohol, marijuana or any controlled drug or substance, a violation of SDCL 32-23-1.

2. I request that you submit to a chemical test of your breath to determine the amount of alcohol, marijuana or any controlled drug or substance in your blood.

3. *You have a right to a chemical test by a person of your own choosing, at your own expense, in addition to the test I have just requested.* (Emphasis supplied mine.)

The State apparently takes the position that if Ms. Zoss refused the test, she forfeited her right to have an independent test. There is no way that the State can wiggle out of its stipulation of facts. The motor patrolman advised Ms. Zoss that if she refused the breath test, he would take her to the hospital for a blood test and that the only difference would be that she could have her driver's license revoked if she refused the breath test. One of the shocking developments of fact in this case was the motor patrolman's admission on the stand that he recognized the importance of the scientific means of blood tests in gathering evidence; to that end, he testified that in every one of the over 200 D.W.I. arrests he had made, he had attempted to obtain a test for blood alcohol content. Stripped down to its naked rationale, the State is here contending the supremacy of statutory law in South Dakota over constitutional law. And, as we all know, such an argument does not hold water. The State is contending that Ms. Zoss' statutory choice not to take a breath test (with its accompanying license-losing sanction) vitiated her constitutional right to her reason-

able opportunity for a timely blood test. To say the least, it is illogical to propound that a citizen's constitutional right will be respected only if the citizen first waives a statutory right. Having no authorities to submit its unsound contention, the State asks this Court to buttress its holding on old implied consent law cases such as *Schlenker* and *State v. Birney*, 85 S.D. 1, 176 N.W.2d 475 (1970). This I refuse to do for it would be tantamount to putting on a set of constitutional blinders.

I hereby vote to reverse this conviction as I believe that this lady was denied her constitutional rights to produce evidence on her own behalf. Ms. Zoss was held in custody beyond the time when she could have made arrangements to have a timely blood sample taken. She was discharged from custody several hours after her arrest. A timely blood test would have been effective evidence irrespective of the percentage of alcohol in the blood. Ultimately, the law enforcement officer (after first telling her that she could have a blood test) told Ms. Zoss that she absolutely had no right to exercise a reasonable opportunity for a blood test. This is blatantly contrary to the holdings contained in the authorities which I have set forth above. What makes this case so constitutionally offensive is that the arresting officer promised Ms. Zoss that if she refused the breath test, he would take her to the hospital for a blood test. Ms. Zoss, having received that assurance, declined the breath test and the law enforcement officer forgot the promise of the blood test. Some 25 years ago, the United States Supreme Court observed that 23 states had enacted state laws sanctioning the use of blood tests to determine intoxication. *Breithaupt v. Abram*, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957). Critical language in that opinion brought out that a blood test could not only prove guilt but it could also prove innocence. Historically, the South Dakota State Legislature has given a great amount of consideration and attention to blood alcohol tests. *See* SDCL ch. 32-23. These statutes seem to cry out for procedures and sanctions pertaining to the gathering of evidence via

blood alcohol testing procedures. How, then, can our courts of law in this state be so callous as to disregard the legislative intent and past United States Supreme Court decisions? A constitutional right of dimension has been violated here. Very little effort would have been required of the trooper to take this lady to the hospital to have a blood sample taken from her body. The opportunity to procure evidence was readily available. In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the highest Court of this land held that the prosecution's suppression of material evidence favorable to an accused upon request violates due process. In *United States v. Bryant*, 439 F.2d 642 (D.C.Cir.1971), it was held that *Brady* also applies to situations where it cannot be determined whether the evidence would have been favorable. Thus, the blood alcohol percentage of Ms. Zoss, whether favorable or unfavorable, is immaterial to her constitutional right. *Cf., State v. Helmer*, 278 N.W.2d 808 (S.D.1979). The constitutional right is one of a reasonable opportunity to have a blood test taken and this was refused based upon unconstitutional stratagem. South Dakota had this lady in custody in a jail cell and her whole being, including the blood coursing in her veins, was in the possession and control of law enforcement. Abraham Lincoln once penned and immortalized the phrase that this was a nation of the people, by the people, and for the people. Should then, a government of the people, withhold from one of its people, evidence which might prove her innocent of a crime she allegedly perpetrated—against all the people? Indeed, this is what has transpired when she is denied an opportunity to have her blood examined for its alcoholic content. There was no way she could gather evidence which might prove favorable to her. To take away her license to drive because of her refusal is a sanction provided by statute, but to refuse her the reasonable opportunity to take and pay for her own blood test is a constitutional transgression of due process and vitiates her criminal conviction.