A97A2537. ALLEN v. THE STATE.
(494 SE2d 229)

ELDRIDGE, Judge.
On February 25, 1996, at approximately 2:00 a.m. Officer Shawn

R. Witmer, Clayton County Police Department, stopped Garth Desmond Allen, defendant-appellant, on Old National Highway for driving a 1995 Peterbilt tractor trailer at 77 mph in a 55 mph zone, as shown on the officer's high Doppler radar unit. While conducting the investigation for speeding, Officer Witmer noted that the defendant's eyes were glassy, red, and bloodshot and that he had a strong odor of alcohol on his breath and person. The defendant voluntarily submitted to a field sobriety test, which indicated impaired motor, balance, and horizontal gaze nystagmus response. With the defendant's consent, the officer attempted to administer an alcosensor breath test. However, in the officer's opinion, which was based on the lack of air exhausted from the machine, the defendant did not blow directly into the alcosensor machine, which would have indicated whether the defendant had been drinking alcohol. The officer testified that, in her opinion, defendant was under the influence of alcohol to the extent that it was less safe to operate a commercial vehicle.

The jury found the defendant guilty of driving under the influence and speeding. Notice of appeal was timely filed.

1. The defendant's first enumeration of error is that the trial court erred by failing to grant defendant's motion to suppress or exclude the alleged "refusal" to submit to the State administered breath test.

Officer Witmer testified that the defendant, through his conduct, refused to consent to a meaningful breath test, when she sought to administer the alcosensor test, not to test the blood alcohol level, but to screen to determine if he had consumed any alcohol and later the breath test: "When the individual is giving a sufficient enough sample it shows a plus sign on the screen. If he's not giving a sample it doesn't show anything. When he gives a sufficient sample for it to manually get a reading it gives two plus signs. If you get one plus sign you can push a — it's called a button which will make the machine do itself. The whole time when I asked the defendant to blow, he was not blowing at all. He would blow around the tube. He would stick his tongue over the tube. He would fill his cheeks with air and just turn red in the face. It was obvious that he wasn't blowing into the tube to give a sample. [Q:] If someone is blowing properly through the tube can you feel the air coming through the tube? [A:] Yes, ma'am. [Q:] If somebody is blowing improperly or blowing around the tube can you feel that, too? [A:] Yes. [Q:] When he took the State requested breath test was that administered on an Intoxilyzer 5000? [A:] Yes, ma'am, it was. [Q:] I should say when he attempted to take the State test. Could you describe for the Court what he was doing as far as avoiding giving a sample. [A:] Again, as you heard me say in the video the same thing, he would not blow long enough; he would not give a sufficient sample. You're required to blow approxi-

mately five seconds and make the bell ring steadily during that five seconds. If anytime the bell does not ring, what is happening is there's not a sufficient sample being put into the machine which would give the machine the opportunity to analyze that sample. Again, he would blow around it. Once he would start, the bell would ring; then he would stop blowing. He would fill his cheeks up with air again and act like he was blowing. Just — he wouldn't blow."

OCGA § 40-6-392 (a) (1) (B) provides in pertinent part, "In all cases where the arrest is made on or after January 1, 1995, and the state selects breath testing, two sequential breath samples shall be requested for the testing of alcohol concentration. . . . No more than two sequential series of a total of two adequate breath samples each shall be requested by the state; provided, however, that *after an initial test in which the instrument indicates an adequate breath sample was given for analysis*, any subsequent refusal to give additional breath samples shall not be construed as a refusal for purposes of suspension of a driver's license under Code Sections 40-5-55 and 40-5-67.1. Notwithstanding the above, a refusal to give an adequate sample or samples on any subsequent breath, blood, urine, or other bodily substance test shall not affect the admissibility of the results of any prior samples. *An adequate breath sample shall mean a breath sample sufficient to cause the breath-testing instrument to produce a printed alcohol concentration analysis.*" (Emphasis supplied.)

At the motion to suppress hearing, the defendant did not testify that he had any physical or medical difficulties that prevented him from providing adequate breath samples. He never testified that he fully complied with the breath test. The defendant testified, "I didn't refuse it. No, I didn't. I took the test." However, the arresting officer/ test administrator testified unequivocally that defendant failed repeatedly to provide adequate breath samples and that the instrument did not produce a printed alcohol concentration analysis, which was objective evidence of his refusal. "The Implied Consent Law requires a *meaningful* submission to the test as otherwise the purpose of the law would be frustrated." (Emphasis supplied.) *Pfeffer v. Dept. of Public Safety*, 136 Ga. App. 448, 450 (221 SE2d 658) (1975); accord *Howard v. Cofer*, 150 Ga. App. 579, 581 (258 SE2d 195) (1979). In addition, OCGA § 40-6-392 (a) (2) (B), unlike its predecessors, has criteria for providing an adequate breath sample. The defendant failed to satisfy such criteria. See *Wyatt v. State*, 179 Ga. App. 327, 329 (4) (346 SE2d 387) (1986).

Further, *Bartnick v. State*, 203 Ga. App. 369, 370 (416 SE2d 739) (1992), held, "Moreover, unlike [*Burson v. Collier*, 226 Ga. 427, 428 (2) (175 SE2d 660) (1970)] and [*Dept. of Public Safety v. Orr*, 122 Ga. App. 439 (177 SE2d 164) (1970)], this case is not a civil proceeding to suspend the license of a motorist for refusal to submit to a chemical

test. It is a criminal case in which the issue is whether [the] defendant was operating [his] vehicle while under the influence of alcohol. Evidence of the defendant's refusal to take a chemical test is relevant and admissible to the issue of defendant's guilt. *Wessels v. State,* 169 Ga. App. 246 (2) (312 SE2d 361) (1983). Defendant was properly offered the opportunity to explain [his] refusal. Id. Thus, the trial court did not err in admitting evidence showing defendant refused to take the breath test ordered by the arresting officer." "In any criminal trial, the refusal of the defendant to permit a chemical analysis to be made of his blood, breath, urine, or other bodily substance at the time of his arrest shall be admissible in evidence against him." OCGA § 40-6-392 (d). Since the defendant failed to show a medical or physical explanation why he was unable to take and complete the designated breath test, the trial court did not err in admitting evidence of such non-verbal refusal. See *Bartnick v. State,* supra at 370; OCGA § 40-6-392 (d); see also *Rawl v. State,* 192 Ga. App. 57, 58 (383 SE2d 903) (1989); *Wessels v. State,* supra at 247-248.

2. The defendant's second enumeration of error is that the trial court erred by failing to grant his motion to dismiss the DUI charge against him based upon the State's actions and inactions, which resulted in an alleged violation of defendant's due process right to obtain exculpatory evidence for use in his defense.

(a) Defendant's failure to complete the State administered test without justification negates the defendant's statutory right to an alternative test. OCGA §§ 40-5-55; 40-5-67.1; 40-5-153; 40-6-392 (a) (3); see *Lufburrow v. State,* 206 Ga. App. 250 (425 SE2d 368) (1992); *Rawl v. State,* supra; *Modlin v. State,* 176 Ga. App. 83 (335 SE2d 312) (1985); *Huff v. State,* 144 Ga. App. 764 (242 SE2d 361) (1978). "[T]he State has the right to have its test performed *before* the defendant's right to take a test attaches because a refusal to take the test constitutes a waiver of the right to an independent test." (Emphasis supplied.) *State v. White,* 188 Ga. App. 658, 659 (373 SE2d 840) (1988); accord *Duckett v. State,* 206 Ga. App. 651 (426 SE2d 271) (1992). Such statutory scheme adequately safeguards the defendant's equal protection and due process rights to gather exculpatory evidence, i.e., an independent blood test. However, such procedure mandates that the defendant voluntarily submit, first, to a State administered test.

(b) The statutory scheme of implied consent, State testing, and independent testing has been held to comply with and to protect due process and equal protection rights. *State v. Martin,* 266 Ga. 244 (466 SE2d 216) (1996); *Lattarulo v. State,* 261 Ga. 124 (401 SE2d 516) (1991); *Allen v. State,* 254 Ga. 433 (330 SE2d 588) (1985); *Lester v. State,* 253 Ga. 235, 236-237 (1) (320 SE2d 142) (1984); *Garrett v. Dept. of Public Safety,* 237 Ga. 413 (228 SE2d 812) (1976); *Melton v. State,* 175 Ga. App. 472 (333 SE2d 682) (1985); *Cogdill v. Dept. of*

*Public Safety*, 135 Ga. App. 339 (217 SE2d 502) (1975). Thus, not only has the defendant waived any statutory right to an independent test, but he has also waived any constitutional claim of equal protection and due process violation due to the State's alleged failure to facilitate his taking an independent test, either while in custody or by expediting his early release in order to permit his obtaining his own independent test. By his refusal to cooperate with the State administered chemical test, the defendant has intentionally refused and rejected the very protection provided by the statutory system of testing whose rational legislative purpose assures due process and equal protection. The defendant has sought, instead, to thwart the implied consent statute by his own actions.

Any constitutional protection can be waived. However, the waiver must be knowingly and intelligently made. In this case, the defendant had been properly given his informed consent warnings, as well as informed of his right to an independent test of his choice. The defendant intentionally chose not to give an adequate breath sample. See generally *Berry v. State*, 267 Ga. 605, 610 (8) (481 SE2d 203) (1997); *State v. McBride*, 261 Ga. 60, 63 (2) (b) (401 SE2d 484) (1991). Thus, his due process claims are without merit.

(c) Defendant contends that he was deprived of the opportunity to gather exculpatory evidence by the delay in bonding out of jail. The stop was made at 2:01 a.m. and defendant bonded out at 8:30 a.m. Defendant delayed over another hour, until 9:40 a.m., before having an independent blood test performed.

When the defendant sought to admit evidence of his independent blood test, the State objected on relevancy grounds because the independent test had been made more than eight hours after the arrest. The trial court sustained the objection.

OCGA § 40-5-55 (a) reads, "[t]he test or tests shall be administered *as soon as possible* to any person who operates a motor vehicle upon the highways or elsewhere throughout this state . . . in violation of Code Section 40-6-391." (Emphasis supplied.) OCGA § 40-6-392 (b) and (c) with regard to certain presumptions regarding blood alcohol concentrations, uses the language "[i]f there was at that time or within three hours after driving or being in actual physical control of a moving vehicle from alcohol consumed. . . ." Such language is used in subsections (b) (4), (c) (1), and (c) (2). However, such language does not limit the relevancy of longer periods as to the defense evidence; if such provision serves as a limitation of admissibility, then it serves to limit admission by the State only, because the State has the right to the first test, has control of the defendant, and should promptly act to gather evidence of blood alcohol concentration at the alleged time of the offense. See OCGA § 40-6-392 (a) (1); *State v. Richardson*, 186 Ga. App. 888, 889 (368 SE2d 825) (1988).

While the defendant's testimony could not prove, identify, or interpret the results, the defendant could testify to taking the test and how long after the arrest the test was made. The defense would then require an expert witness to introduce and make relevant the test results. Since blood alcohol levels drop at a constant excretion rate over time when no further alcohol is ingested, when variations in metabolism are discounted, and when levels of alcohol already in the stomach but not yet absorbed through the intestines are considered, then an expert witness can calculate blood alcohol levels from a blood sample taken nine hours after arrest and plot a graph which shows the blood alcohol level at the time of arrest and each intervening hour until the test was performed, which is based on hourly bodily excretion rates. Such expert testimony would be relevant and admissible to allow the jury to infer from such circumstantial evidence the prior blood alcohol level at the time of arrest. Nothing in OCGA § 40-6-392 (a) (1) denies the defendant such right to tender the evidence, if the defendant shows that the evidence is relevant. See *Cheevers v. Clark*, 214 Ga. App. 866, 868 (2) (449 SE2d 528) (1994); see also *Simon v. State*, 182 Ga. App. 210, 211 (3) (355 SE2d 120) (1987); *Morris v. State*, 172 Ga. App. 832, 833 (1) (324 SE2d 793) (1984).

However, in this case, the defense failed to show such relevance. The defendant's testimony, alone, would clearly not be sufficient and would prove nothing. Thus, the trial court did not err in excluding such testimony.

Further, the defendant acquiesced in the trial court's ruling when he failed to preserve the evidentiary ruling against the defense by making an offer of proof regarding what he expected to prove. The defendant failed to show that the testimony was relevant, material, and beneficial by demonstrating that the blood alcohol level of the defendant at the time of arrest was below the level set forth in OCGA §§ 40-6-391 (i) and 40-6-392 (c) and that, from the independent test made eight hours later, the earlier blood alcohol level could be calculated by an expert witness, who was, in fact, waiting to testify as to the relevance of the results. The defense failed to preserve such evidentiary ruling for appellate review through an offer of expert evidence showing by circumstantial evidence the defendant's blood alcohol level at the time of his arrest. *Ewing v. Johnston*, 175 Ga. App. 760, 765-766 (2) (334 SE2d 703) (1985); accord *Maddox v. Elbert County Chamber of Commerce*, 191 Ga. App. 478, 480 (382 SE2d 150) (1989); see also *In re A. M. S.*, 208 Ga. App. 328, 330 (2) (430 SE2d 626) (1993); *Hendrix v. Byers Bldg. Supply*, 167 Ga. App. 878, 880 (2) (307 SE2d 759) (1983).

The trial court did not err in denying defendant's motion to dismiss.

*Judgment affirmed. Birdsong, P. J., concurs. Ruffin, J., concurs in judgment only.*

DECIDED NOVEMBER 4, 1997 —
RECONSIDERATION DENIED NOVEMBER 18, 1997 —

*Law Office of George A. Stein, Monte K. Davis*, for appellant.
*Keith C. Martin, Solicitor, Evelyn Proctor, Assistant Solicitor*, for appellee.