STATE of Minnesota, Respondent,

v.

Michael LARIVEE, Petitioner,
Appellant.

No. C2–01–1942.

Supreme Court of Minnesota.

Jan. 30, 2003.

Jeffrey S. Sheridan, Strandemo & Sheridan, P.A., Eagan, for Appellant.

Mike Hatch, Minnesota Attorney General, Todd P. Zettler, Scott Joint Prosecution, Shakopee, for Respondent.

## OPINION

GILBERT, Justice.

Appellant Michael Larivee was charged with driving under the influence of alcohol—child endangerment in violation of Minn. Stat § 169.121, subd. 1(a) and subd. 3(c)(4) (1998), refusal to submit to testing in violation of Minn.Stat. § 169.121, subd. 1a and subd. 3(c)(4) (1998), and failure to properly stop at a stop sign in violation of Minn.Stat. § 169.30 (1998). The district court ruled that by being denied access to an independent blood-alcohol test, the appellant's due process right to a fair trial was violated on the driving under the influence charge but not on the refusal to test charge. The district court also found that collateral estoppel prevented appellant from relitigating whether he refused to submit to testing in violation of Minn.Stat. § 169.123, subd. 2(b), because that precise issue was addressed in the implied consent hearing.

The district court certified the case to the court of appeals pursuant to Minn. R.Crim. P. 28.03, finding that the case presented an issue of constitutional dimension, which was an issue of first impression

in this state, and had been decided differently by courts around the country. The case was then stayed pending resolution in Minnesota's appellate courts.

The district court in certifying the case failed to articulate the precise question to be resolved by the appellate courts. The court of appeals heard the case and construed the certified question to be "whether a defendant's rights to due process and a fair trial are violated when he is denied his request to obtain an independent blood-alcohol-level test after he first refuses to submit to the police-administered test." *State v. Larivee,* 644 N.W.2d 100, 104 (Minn.App.2002). The court of appeals interpreted the statute to require submission to the police-administered test as a condition precedent to the right to obtain an independent test, found no merit on constitutional claims, and held that collateral estoppel did not apply here because the result in a civil proceeding cannot be used to bind a criminal defendant on any element of the crime. We affirm.

The incident that gave rise to the charges occurred at 3 p.m. on Friday, November 17, 2000, when the appellant was picking up two children from the Jordan High School parking lot. A police officer stopped the appellant after he saw him make an excessively wide turn and disregard a stop sign. While speaking with appellant, the officer smelled the strong odor of alcohol on the appellant's breath, saw that his eyes were glassy and bloodshot, and noticed that his speech was slightly slurred. The appellant failed the field sobriety tests administered by the officer. When asked by the officer if he had been drinking, appellant admitted drinking a "half bottle" of wine during his 2 p.m. lunch. The officer then administered a portable breath test to appellant, which he failed. The officer read the Minnesota Implied Consent Advisory and the appellant asked to call an attorney. After talking to his attorney on the telephone from the police station, the appellant said, "Upon advice of my attorney, I don't feel like taking it." Then, reading from a note he had made stated, "However, I would request my own test from an individual outfit that would come out here to the jail station." Appellant was taken to the Scott County Jail. The arresting officer advised the jail staff that appellant had requested his own test, and left the jail believing the jail staff was providing the appellant a telephone.

While being booked, appellant again requested his own test. The booking sergeant, without conferring with anyone else, denied that request because he believed that "only a person who has completed a test at the arresting officer's request has the right to arrange for his own test." The district court took judicial notice of the fact that appellant's first opportunity to go before a Scott County judge for a bail hearing was the Monday following appellant's Friday afternoon arrest.

## I.

The district court certified this case to the court of appeals without formulating a precise legal question. A certified question "should be carefully and precisely framed so as to present distinctly and clearly the question of law involved." *Thompson v. State,* 284 Minn. 274, 277, 170 N.W.2d 101, 103 (1969). When the district court fails to properly frame the issues, the appellate court has the authority to clarify the question certified. *See State v. Wicks,* 258 N.W.2d 598, 599–600 (Minn. 1977). Therefore, this court as a preliminary matter must decide precisely what question is to be addressed. In this case, the district court certified only the issues relating to the driving under the influence charge, not those stemming from the re-

fusal to submit to testing charge. The primary issue is whether the appellant's constitutional right to due process and a fair trial was violated with regard to the driving under the influence charge when, while in custody, he was denied the opportunity to obtain an independent blood-alcohol-concentration test. To fully address that question this court must first determine the extent of the statutory right to an independent test. Finally, this court granted a petition for cross-review of whether the appellant can be barred from litigating in his criminal driving under the influence trial an issue previously decided in a civil implied consent hearing.

■■■ The first issue is whether Minn. Stat. § 169.123, subd. 3(a) (1998)[1], required appellant to submit to a police administered blood-alcohol-concentration test as a condition precedent to accessing his own independent test. This court reviews questions of statutory interpretation de novo. *Scott v. Minneapolis Police Relief Ass'n, Inc.*, 615 N.W.2d 66, 70 (Minn.2000). When interpreting a statute, this court's purpose is to determine the intent of the legislature. *Kulinski v. Medtronic Bio-Medicus, Inc.*, 577 N.W.2d 499, 502 (Minn. 1998). "A statute should be interpreted, whenever possible, to give effect to all of its provisions, and 'no word, phrase, or sentence should be deemed superfluous, void, or insignificant.'" *Baker v. Ploetz*, 616 N.W.2d 263, 269 (Minn.2000) (quoting *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999)). Words and phrases are to be given their ordinary meaning. *Baker*, 616 N.W.2d at 268.

Minnesota Statutes § 169.123, subd. 3(a) states in relevant part:

> The person tested has the right to have someone of the person's own choosing administer a chemical test or tests in addition to any administered at the direction of a peace officer; provided, that the additional test sample on behalf of the person is obtained at the place where the person is in custody, after the test administered at the direction of a peace officer, and at no expense to the state.

The sentence in the statute that creates the right to an independent test starts by stating, "The person tested has the right." Here, the appellant refused the police-administered test, and none was taken. Thus, he was not a "person tested" and under the statute had no right to obtain an independent test. Likewise, the statute makes provision for an independent chemical test "provided" that certain conditions are met. The word provided generally means "on condition that."[2] The conditions in this statute are that the additional test occurs at the place of custody after the peace officer administers the test and at no expense to the state. The language of the conditions set forth in the statute includes the phrases "in addition," "additional test," and "after the test administered," all of which indicate that the statute is intended to grant a statutory right only to those who have first submitted to the police-administered test.

Therefore, we hold that when a person charged with a Minn.Stat. § 169.123, subd. 3(a) related driving charge is in custody, the person must submit to the state's test

---

1. Since the incident that gave rise to this event, Minn.Stat. § 169.123, subd. 3(a), was repealed by Act effective Jan. 1, 2001, ch. 478, art. 2, § 8, 2000 Minn. Laws 1484, 1537–38. The current law on this topic, Minn.Stat. § 169A.51, subd. 7(b) (2002), uses the identi-cal language as the version of the statute at issue here.

2. *Webster's Third New International Dictionary*, 1827 (1993).

as a condition precedent to the right to an independent test. Here, appellant was in custody and refused to allow the police officer to direct the administration of the state's chemical test. As such, appellant was not charged with driving with over .10 blood-alcohol level pursuant to Minn.Stat. § 169.121, subd. 1(d) (1998). Minnesota Statutes § 169.123, subd. 3(a) allows for an additional test on condition that other statutory requirements are met. Thus, we affirm the court of appeals as to the statutory interpretation.

## II.

■ Next, we address the issue of whether appellant's constitutional right to due process and a fair trial was violated when the appellant was denied the right to obtain an additional test sample of his blood-alcohol concentration because he had refused to submit to the state's test. The district court found that denying the appellant the right to secure his own test after he had refused the officer-administered test violated due process. The district court judge believed that when the defendant was not "immediately released from custody and therefore able to obtain his own test," it was "fundamentally unfair" to "den[y][him] the right to obtain any evidence of value concerning any criminal DUI charge."

In coming to that conclusion, the district court found the reasoning of the Montana Supreme Court in *State v. Swanson*, 222 Mont. 357, 722 P.2d 1155, 1157 (1986), persuasive and quoted the holding from that case, "[w]hen the crime involves intoxication, the accused has a right to obtain a sobriety test independent of that offered by the arresting officer." However, in *Swanson*, the appellant was allowed to obtain his own test and he did so. But, the police failed to properly preserve the sample while he was in custody and, therefore,

it could not be used because of spoliation. *Id.* at 1156.

Neither the district court decision nor the Montana case upon which it relied adequately addresses the appropriate authority for deciding when a denial of access to evidence amounts to a due process violation. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny provide the standard for determining when due process is violated. This court has found that to succeed on a *Brady* claim, defendant must show (1) that the evidence at issue was favorable to him; (2) that evidence was willfully or inadvertently suppressed by the state; and (3) that he was thereby prejudiced. *Woodruff v. State*, 608 N.W.2d 881, 888 (Minn.2000) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

In *California v. Trombetta*, 467 U.S. 479, 488, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), the Supreme Court held that the state's failure to preserve breath samples for defendants charged with driving while intoxicated did not violate the Federal Constitution. The Court held that the Constitution only requires states to preserve evidence, "that might be expected to play a significant role in the suspect's defense." *Id.* at 488, 104 S.Ct. 2528. The Court went on to hold that to meet that standard, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. 2528. The Court, in ruling that the conditions were not met, based its decision, in part, on the reliability and accuracy of the equipment used, and found that the chance the breath samples were exculpatory was extremely low. *Id.*

In the case before this court, the appellant refused to take the police-administered blood-alcohol-concentration test and was subsequently denied access to an independent test. In *Trombetta*, the evidence not preserved by the police was captured breath samples. *Id.* Here, the evidence the police did not allow the appellant to capture and preserve was a measurement of the level of alcohol in his blood stream. In *Trombetta*, there were test results once available; here there are none. Thus, the analysis must turn on whether an independent alcohol-concentration test possesses an exculpatory value apparent at the time the access to the test was denied. We must determine if an alcohol-concentration test might be expected to play a significant role in appellant's defense.

Because appellant did not take the test, he was not charged with driving with blood-alcohol level over .10 in violation of Minn.Stat. § 169.121, subd. 1(d). He was charged with driving under the influence. While the test may have been probative of driving under the influence, it could not be expected to play a significant role in appellant's defense in light of the fact that appellant had the odor of alcohol on his breath, had glassy bloodshot eyes, failed the field sobriety test, admitted to drinking a half bottle of wine shortly before, and failed the portable breath test. The court of appeals found no merit in appellant's constitutional argument and stated that, "Larivee points to nothing to suggest that an independent test would not have corroborated intoxication." *Larivee*, 644 N.W.2d at 105. We agree.

Even if the independent blood test met the standard of constitutional materiality presented above, for the appellant to prevail under the *Trombetta* standard he must show he was "unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489, 104

S.Ct. 2528. There is no evidence in the record that the alcohol-concentration tests administered by the state are inaccurate. Indeed, in oral argument before this court, defense counsel conceded he was unaware of any difference in the reliability of the test administered by the police and an independent test. The only difference pointed out is that police have possession of the test they administer, but not the independent test. As such, based on this record, the police-administered test the appellant refused was comparable evidence reasonably available to him.

Appellant attempts to distinguish the facts of this case from *Trombetta* by arguing that the officer here acted in bad faith; whereas, in *Trombetta* and *Arizona v. Youngblood*, 488 U.S. 51, 56, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the police acted " 'in good faith and in accord with their normal practice.' " *Trombetta*, 467 U.S. at 488, 104 S.Ct. 2528 (quoting *Killian v. United States*, 368 U.S. 231, 242, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961)). Based on the record before this court, there is no evidence of bad faith. The district court's findings of fact indicate that the booking officer, without conferring with anyone else, refused appellant's request for his own test made during the routine booking process. The booking officer based this refusal on his belief that "only a person who has completed a test at the arresting officer's request has the right to arrange for his own test." Here, it is clear that the denial of access, although deliberate, was made without animus and in accord with what the booking officer believed was the appropriate procedure. Furthermore, as the court of appeals noted, the state too is without a chemical test to use against the appellant. *Larivee*, 644 N.W.2d at 106.

There are cases from other jurisdictions that have found that denying a defendant access to an independent test upon refusal

to submit to the state's test is a violation of due process. The case the district court found persuasive, *State v. Swanson*, 222 Mont. 357, 722 P.2d 1155 (1986), is one. Intermediate appellate courts in Arizona and Tennessee have concluded similarly. *See Smith v. Cada*, 114 Ariz. 510, 562 P.2d 390 (Ct.App.1977); *State v. Choate*, 667 S.W.2d 111 (Tenn.Crim.App.1983).[3]

However, many other jurisdictions that have addressed this issue have found no due process violation. In *State v. Zoss*, 360 N.W.2d 523, 524 (S.D.1985), the South Dakota Supreme Court was faced with a similar situation where the defendant refused a state administered test and then requested her own independent test. The South Dakota Supreme Court followed *Trombetta* and *Brady* and found that there was no assurance that the blood test would be exculpatory. *Zoss*, 360 N.W.2d at 525. That court went on to state that it was the defendant who withheld the evidence by refusing to submit to the test, not the state. *Id.*

Likewise, intermediate courts of appeal in Michigan and Georgia have held that a defendant's due process rights are not violated by being denied the opportunity to access an independent test after having refused to submit to the state's test.[4]

The supreme courts of Indiana and Arkansas, without addressing the constitutional issues, have found that the statutes in those states require submission to the state's test as a prerequisite to obtaining an independent test. *See Hill v. Otte*, 258 Ind. 421, 281 N.E.2d 811 (1972), *McEntire v. State*, 305 Ark. 470, 808 S.W.2d 762 (1991).

This court concludes that the constitutional due process issue in this case should be addressed consistent with *Brady* and its progeny. Thus, we join the jurisdictions that have found no constitutional violation in circumstances such as those present here. We affirm the court of appeals and hold that the appellant's constitutional right to due process and a fair trial was not violated when, while in custody, he was denied the right to obtain an independent blood-alcohol-concentration test after having refused to submit to the police-administered test.

Having decided in the state's favor on the primary issue in this case, we need not address the state's argument that the doctrine of collateral estoppel bars the appellant from litigating in his criminal DUI trial a legal issue previously litigated in the implied consent proceeding arising from the same incident.

Affirmed.

Concurring in part, dissenting in part, BLATZ, C.J., and MEYER, J.

MEYER, Justice (concurring in part, dissenting in part).

I agree with the majority's interpretation of Minn.Stat. § 169.123, subd. 3(a) (1998). I disagree with the majority's conclusion that the statute is constitutional; to condition an individual's right to access

---

**3.** The dissent cites dicta from three cases where courts opined that drivers had a constitutional right to an independent test, regardless of their compliance with police-administered exams. *Swanson*, 222 Mont. 357, 722 P.2d 1155 (1986); *State v. Lewis*, 266 S.C. 45, 221 S.E.2d 524, (1976); *State v. Choate*, 667 S.W.2d 111 (Tenn.Crim.App.1983). In another case cited by the dissent, the constitutional issue is not addressed; rather, the court held that statutory law required that a driver be granted access to an independent test even when refusing the police-administered test. *State v. Dressler*, 433 N.W.2d 549 (N.D.Ct. App.1988).

**4.** *See People v. Dewey*, 172 Mich.App. 367, 431 N.W.2d 517 (1988); *Allen v. State*, 229 Ga. App. 435, 494 S.E.2d 229 (1997).

evidence for his or her defense on the state's access to that same evidence deprives an individual of his or her due process right to gather possible exculpatory evidence.

A person arrested in Minnesota for driving while intoxicated is brought into a system of laws designed to effectively detect, deter, and punish his or her conduct. Our laws exact serious civil, criminal, and financial penalties for someone suspected of driving while impaired. Minnesota statutes permit a police officer who suspects an individual is driving while impaired to "require the driver to provide a sample of the driver's breath for a preliminary screening test." Minn.Stat. § 169A.41, subd. 1 (2002).[1] If the driver refuses the preliminary screening test, his or her refusal is admissible evidence in a criminal prosecution for drunk driving. Minn.Stat. § 169A.45, subd. 3 (2002).[2] In addition, if a driver refuses either a blood, breath, or urine test after the preliminary screening test, he or she faces two potential sanctions: (1) the state revokes his or her driver's license for a year under the state's civil administrative powers, and (2) the refusal is a crime with its own punishment. Minn.Stat. § 169A.52, subd. 3 (2000); Minn.Stat. § 169A.20, subds. 2, 3 (2002).

Minnesota and federal case law uphold the state's legitimate interest in encouraging drivers to submit to chemical testing. The United States Supreme Court has upheld a state's right to act on that interest by requiring a suspected intoxicated driver to submit to a blood-alcohol test, and legislating that an individual's refusal to consent to such a test can be introduced as evidence of intoxication. *See South Dakota v. Neville*, 459 U.S. 553, 566, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983); *Schmerber v. California*, 384 U.S. 757, 770–72, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). We have held that a criminal prosecution for refusal to submit to chemical testing does not violate Fifth Amendment rights of people suspected of drunk driving. *See McDonnell v. Comm'r of Pub. Safety*, 473 N.W.2d 848, 855 (Minn.1991).

The majority's holding today, however, oversteps legitimate boundaries of what the state can do to compel a suspect to give a potentially inculpatory chemical sample. Larivee was punished for his refusal to take the state's test. He was charged with test refusal and his driver's license was revoked. The majority penalizes him further by disallowing him access to his own test, a penalty not permitted under the constitutional right to due process and a fair trial.

The majority relies on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), for guidance in deciding when a denial of access to evidence amounts to a due process violation. *Brady* and *Trombetta* are inapposite because in both cases the Court addressed the rights of a defendant to access evidence in the government's possession. Here, we are confronted with a very different question, to-wit, whether the statute requiring Larivee to submit to the state's blood-alcohol-level test *before* he could avail himself of an independent test violates due process of law.

---

**1.** Although the sections were numbered differently in 1998, I will cite the current statutes. The consequences for refusing to take a breath or chemical test have been the same since 1998.

**2.** The admission of the refusal highlights the fact that a prosecution for driving while impaired is not stymied by a suspect's refusal to submit to testing. Officers simply testify to an accused's guilt based on the same factors that gave them probable cause to require the test.

At issue in *Trombetta* was whether California was obligated *to preserve* potentially exculpatory evidence it had gathered. Trombetta complained of the failure of California police to preserve breath samples that police had gathered for independent testing. Before reaching the issue, however, the Court set out three categories of "access-to-evidence" cases. One category involved the government's obligation to turn over exculpatory evidence in its possession to the accused. Another category, applicable to the facts of *Trombetta*, involved the government's duty to preserve evidence in its possession for defendants. In addressing the government's duty to preserve evidence in such a case, the Court set out a two-part test of constitutional materiality. Preservation is required where the evidence at issue is obviously exculpatory and the defendant has no reasonable alternative method of obtaining comparable evidence. *Trombetta*, 467 U.S. at 489, 104 S.Ct. 2528. The Court later added that the defendant must also show bad faith by the police to prevail. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Because *Trombetta* was concerned with the "preservation" of evidence and not the attainment of evanescent evidence in the first instance, it does not provide the appropriate analysis for this case.

It was the third category of cases set out in *Trombetta*—described by the Court as "less clear" and left undecided—that encompasses our case today. This category involved "the extent to which the Due Process Clause imposes on the government the additional responsibility of guaranteeing criminal defendants access to exculpatory evidence *beyond the government's possession.*" *Trombetta*, 467 U.S. at 486, 104 S.Ct. 2528 (emphasis added). The United States Supreme Court has not yet returned to address this category.

Under the Due Process Clause, the government must give defendants "a meaningful opportunity to present a complete defense." *Id.* at 485, 104 S.Ct. 2528. The Due Process Clause protects defendants against the government "hamper[ing] a criminal defendant's preparation for trial." *Id.* at 486, 104 S.Ct. 2528.[3] At a minimum, the statute at issue here hampers a driver's ability to present a complete defense by depriving him or her of the opportunity to obtain independent blood-alcohol testing unless he or she first submits to such testing by the state. The state has the right to criminally penalize the refusal to submit to the state's required test as a condition of being licensed. *See McDonnell*, 473 N.W.2d at 855. However, it is a wholly different matter to hold that the state can prevent the ability of a defendant to obtain potentially exculpatory—and importantly evanescent—evidence to defend against a criminal charge involving driving under the influence. The majority ignores this distinction and, in doing so, undermines the defendant's right to present a meaningful defense.[4] This sequence is im-

---

**3.** The Court has noted that the due process rights of defendants could be violated by a state's prejudicial and intentional delay in bringing an indictment or deporting key witnesses, because both diminish the defendant's ability to mount a defense. *United States v. Valenzuela–Bernal*, 458 U.S. 858, 868–70, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982); *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

**4.** The potential ramifications of the majority's holding may not be readily apparent from the facts before us today, but can be foreshadowed by a reference to a recent case from this court. In *Krosch*, blood-alcohol testing was not done by the state, nor requested by the defendant, even though police suspected intoxication, and impairment may have provided a defense to an element of first-degree murder. *See State v. Krosch*, 642 N.W.2d

portant because of the evanescent nature of the evidence.

Courts around the nation concur that individuals who are accused of driving while intoxicated have a right to independent blood tests. *See, e.g., In re Koehne,* 54 Cal.2d 757, 8 Cal.Rptr. 435, 356 P.2d 179, 180–81 (1960); *Commonwealth v. Alano,* 388 Mass. 871, 448 N.E.2d 1122, 1126 (1983); *State v. Snipes,* 478 S.W.2d 299, 303 (Mo.1972); *State v. Dake,* 247 Neb. 579, 529 N.W.2d 46, 49 (1995); and *Schroeder v. State,* 105 Nev. 179, 772 P.2d 1278, 1281 (1989). Very few courts, however, have addressed the precise question of whether it is constitutional to legislate that the government is first in line to take blood-alcohol samples from the suspect. Of the three state supreme courts that have addressed this same question, two found that accused drivers had a constitutional right to an independent test, regardless of their compliance with police-administered exams. *See State v. Swanson,* 222 Mont. 357, 722 P.2d 1155, 1157 (1986); *State v. Lewis,* 266 S.C. 45, 221 S.E.2d 524, 526 (1976). *But see State v. Zoss,* 360 N.W.2d 523, 525 (S.D.1985). Intermediate courts in three other states have reached the same conclusion. *See Smith v. Cada,* 114 Ariz. 510, 562 P.2d 390, 393 (Ct.App. 1977); *State v. Dressler,* 433 N.W.2d 549, 550 (N.D.Ct.App.1988); and *State v. Choate,* 667 S.W.2d 111, 112 (Tenn.Crim. App.1983).

For these reasons, I would join Montana and South Carolina and hold that Minn. Stat. § 169.123, subd. 3(a) violates the Due Process Clause of the Fourteenth Amendment by conditioning an individual's right to access potentially exculpatory evidence on the state's prior access to that evidence.

The state may not unreasonably interfere with an individual's timely, reasonable attempts to secure an independent examination. Therefore, I would reverse the court of appeals and answer the district court's certified question, as construed by the court of appeals, in the affirmative.

BLATZ, Chief Justice (concurring in part, dissenting in part).

I join in the concurrence/dissent of Justice Meyer.

713, 716–17 (Minn.2002). We must ask whether in that case we would have conditioned the defendant's request for access to evanescent evidence upon submission to a test by the state, when the request is made solely for the purpose of defending himself against murder charges in the first degree. I suggest we would not.