W. W. Hill, Jr., Acting Commissioner, Motor Vehicles *v.*
Marlyn L. Otte.

[No. 1270S291. Filed May 1, 1972.]

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Deputy Attorney General, for appellant.

*George H. Gossman,* of Seymour, for appellee.

Givan, J.—Appellee was arrested at 3:00 A.M. on May 8, 1970, for driving under the influence of intoxicating liquor. Following his arrest appellee refused to take a breathalyzer test. This fact was certified to the appellant. After due notice appellant through his duly appointed hearing officer conducted a hearing, the result of which was the revocation of appellee's driver's license for a period of one year, pursuant to the terms of Chapter 64 of the Acts of 1969, Sections 1 and 2, which has

since been superseded by Public Law 130 of the Acts of 1971, Section 1.

The statute which was in force at the time of the alleged violation in question reads in part as follows:

"SECTION 1. Whenever any person is driving or operating a motor vehicle upon the highways of the State of Indiana, and any uniformed state, county or city police officer makes a lawful arrest of said person for driving a motor vehicle while under the influence of intoxicating liquor and such person refuses to provide, when it is within his capacity to do so, physical scientific evidence as hereinafter defined and when so requested by said police officer who makes such lawful arrest, the commissioner of motor vehicles may, upon the receipt of a report duly sworn to by the law enforcement officer and a witness, suspend, pursuant to Section 4 of this act, said driver's license or permit for a period not to exceed one (1) year; or if the person is a resident without a license or permit to operate a motor vehicle in this state, the commissioner of motor vehicles may deny to the person the issuance of a license or permit for a period of one (1) year after the date of the alleged violation subject to review as hereinafter provided.

"For the purposes of this act, the term 'physical, scientific evidence' shall mean evidence revealing the alcoholic content of the blood, such evidence being obtained by breath analysis as set out in Section 2 of this act, approved by and administered in a manner approved by the state department of toxicology; Provided, That such test shall be administered within two (2) hours of the time of arrest.

"SEC. 2. The administration of chemical tests required to produce evidence for the purpose of this act shall be performed, using the breath, by persons, including law enforcement officers, who are duly certified by the State Department of Toxicology of the Indiana University School of Medicine to perform such tests and whose certification is valid at the time of the administration of the test or tests. The arresting law enforcement officer shall not perform the chemical test. The person tested may have a physician, registered nurse or medical technician of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer and the results of this test or tests shall indicate the date and time of the test or tests. Upon request of the accused, the law enforcement officer shall, if possible, make one (1) of the

chemical tests and the results thereof available. Upon the request of the person who is tested, full information concerning the test or tests taken at the direction of the law enforcement officer shall be made available to him.

"At the time a request is made for the submission to a test, the law enforcement officer shall inform the accused that refusal to submit to the test may result in revocation, suspension or denial of his driver's license or permit. In addition the accused shall be informed that he may have independent tests performed by persons of his own choosing at his own expense as herein above provided. In the event no duly certified person, other than the original arresting officer, is available to accept a breath sample and test same within two (2) hours from the time of the original arrest, then the demand for such breath sample and all other provisions of this act shall be null and void and of no further force or effect; but the original arrest shall continue under the law applicable to same.

"Provided, That Sections 1 and 2 do not apply to any person who is unconscious."

The evidence in this case discloses testimony by the arresting officer from which a trier of fact could logically find that the appellee was under the influence of alcohol. In refusing to take the breathalyzer test the appellee stated that he preferred to have his personal physician give him a blood test. However, this was not done in view of the fact that appellee had refused the breathalyzer test offered by the police.

At 8:30 in the morning following his arrest at 3:00 A.M. the appellee was first taken before a magistrate.

The appellee appealed the action of the appellant revoking his driver's license to the Jackson Circuit Court. His complaint filed in the Jackson Circuit Court reads in part as follows:

"2. That at the time of the arrest the Police Officers offered to give a breathalizer test to Plaintiff and Petitioner, which was by him refused, and upon arrival at the Police Station a second offer of a test by breathalizer was offered Plaintiff, which he refused and stated that he was willing to and desired to have a blood test or urine test made at a hospital or by a private doctor;

"3. That the arresting Police Officer failed and refused to grant Plaintiff's request for such an examination although the same was made pursuant to his rights under the statutes as set out in Burns Indiana Statutes Annotated, 1965 Replacement, 1970 pocket part, Sections 47-2003d and 47-2003e;

"4. That by the actions of the arresting Police Officers as hereinbefore set forth the Plaintiff and Petitioner was denied his rights under the above numbered Sections, and also his constitutional rights under the Constitution of Indiana and the Constitution of the United States of America;

"5. That Plaintiff and Petitioner also suffered a denial of his constitutional rights, both under the State and Federal Constitutions, in that he was also denied the right to be arraigned before a Hearing Magistrate forthwith for the purpose of a hearing of probable cause;

"6. That because of the above actions of the Police Officers the arrest was null and void and of no effect;

"7. That subsequent to the date of the arrest, pursuant to notice, a hearing was had in the Police Station at Brownstown, Indiana, on July 6, 1970, at which time one Ralph McGregor, Hearing Judge, acting on behalf of the Commissioner of Motor Vehicles, suspended Plaintiff and Petitioner's driving privileges from July 6, 1970 to July 6, 1971, and at said hearing took possession of Plaintiff and Petitioner's driving license;

"8. That the hearing had hereon and the actions of the Commissioner through the Hearing Judge hereinbefore named was illegal, arbitrary and capricious, and the ruling made by said Hearing Judge was unnecessarily harsh and arbitrary in view of the facts surrounding the arrest of Plaintiff and Petitioner herein;"

After hearing evidence the Jackson Circuit Court rendered the following finding:

"And the Court having heard the evidence and representations of counsel and being duly advised in the premises now finds that the material allegations contained in Plaintiff's petition are true and that the Hearing Judge herein, one Ralph McGregor, acting on behalf of the Commissioner of Motor Vehicles, arbitrarily, illegally and capriciously suspended the right of Plaintiff to drive and operate a motor vehicle and all of Plaintiff's driving privileges from July 6, 1970 to July 6, 1971; and the Court further finds that Plaintiff was deprived of his constitutional rights to have an ac-

ceptable test administered for the purpose of revealing the alcoholic content of the blood by the arresting Officers at the time of the arrest and subsequent thereto; and the Court further finds that by the acts of the arresting Officers the Plaintiff was also denied his right to be arraigned before a Hearing Magistrate forthwith for the purpose of a hearing of probable cause; and the Court further finds that the order suspending the driving privileges of Plaintiff from July 6, 1970 to July 6, 1971 should be set aside and held for naught and that Plaintiff's driving privileges and his Operator's License should be restored to him forthwith, and that a certified copy of this order should be transmitted to the Department of Motor Vehicles of the State of Indiana and the Commissioner thereof for the purpose of compliance;"

It is the appellant's contention the trial court erred in determining the appellee was deprived of his constitutional rights to have an accepted test administered for the purpose of revealing the alcoholic content of his blood. As pointed out above, the appellee refused to submit to the breathalyzer test. Therefore, under Section 1 of the act in force at that time and above quoted the Commissioner of Motor Vehicles was authorized to suspend his driver's license.

We hold the trial court was in error in holding that the appellee had a right under the statute to substitute an acceptable test in lieu of the breathalyzer test. The language of the above quoted statute is clear and unambiguous that the additional tests are available to a defendant who submits to the breathalyzer test. After so submitting to a test, the accused person is under the statute permitted a cross check by a physician, registered nurse or medical technician of his own choosing. There is nothing in the language of the statute which indicates that such tests are to be given in lieu of the breathalyzer test required by the statute. When the appellee chose to refuse the breathalyzer test, he was not entitled to the additional tests called for in the statute and was subject to the penalty of having his driver's license revoked for one year.

It is noted that the Judge of the Jackson Circuit Court also

held that appellee's constitutional rights were violated because he was not taken immediately before a magistrate following his arrest. We note his arrest occurred at 3:00 A.M. and that he was taken before a magistrate at 8:30 that same morning. We hold the trial court erred in holding that this was a violation of appellee's constitutional rights. As this Court has previously held the required court appearance must take place as soon as practicable under all circumstances, but is limited to bringing an accused before a magistrate during the usual hours for conducting court. *McClanahan* v. *State* (1953), 232 Ind. 567, 112 N. E. 2d 575.

For the reasons above stated the trial court is reversed.

We observe from the record that two months and three days of the one year suspension had elapsed at the time the Jackson Circuit Court ordered appellee's license restored. This cause is, therefore, remanded to the Jackson Circuit Court with direction to reinstate the remaining balance of the one year suspension ordered by the appellant.

Arterburn, C. J., and DeBruler, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 281 N. E. 2d 811.