Appellant, Joey Lee Gibson, was convicted on two counts (two separate offenses) of driving while under the influence of alcohol (D.U.I.) and one count of attempting to elude police officers. See § 32-5A-191, Code of Alabama 1975, adopted by Ordinance # 832308, City of Troy, Alabama.
Officer Ron Edwards of the Troy Police Department testified that on June 24, 1984, he observed appellant within the city limits of Troy, driving a motorcycle at a "high rate of speed." Edwards pursued appellant for approximately four miles, with lights and siren in operation, and appellant failed to stop. Edwards stated that appellant "crossed the yellow line several times," and the chase exceeded speeds of over 100 miles per hour. Appellant ultimately stopped and Edwards requested appellant's driver's license. A license check indicated that appellant's driver's license was suspended. Edwards stated that appellant smelled of the odor of "alcoholic beverage about his person," his eyes were very red, and he appeared intoxicated. Appellant was placed under arrest and taken to the police station where a Photo-Electric Intoximeter (P.E.I.) test was administered by Officer Vance Ventress. This test indicated that appellant had a .12 blood alcohol level. Appellant was charged with D.U.I.
Sergeant Ken Johnson of the Troy Police Department testified that on August 19, 1984, he observed appellant on a motorcycle exiting a parking lot, at a lounge on County Road 21, at a very high rate of speed. The posted speed limit was 55 miles per hour, and appellant exceeded this speed. Johnson pursued appellant, with lights and siren operating, for a total of three miles. Appellant's speed exceeded 100 miles per hour; he passed a car in a no-passing zone; cut across a private yard to a dirt road where he lost control of the motorcycle, and was apprehended by Johnson. Appellant was placed under arrest for "reckless driving, speeding, and no tag." Johnson stated that appellant "had an alcohol or odor about his person that resembled alcoholic beverage, his eyes were bloodshot, he was unsteady in his stance, slightly slurred in speech. From prior experience the subject appeared to be intoxicated." Appellant was taken to the police station, where he refused to take a P.E.I. test. Appellant was charged with D.U.I. and attempting to elude.
 I
Appellant first contends that the trial court erred in allowing the State to elicit testimony concerning appellant's refusal to take a P.E.I. test on August 19, 1984. It is argued that § 32-5-192 (c), Code of Alabama 1975, grants an accused the right to refuse to submit to a chemical test; and therefore if the State is allowed to introduce *Page 465 
the fact of refusal into evidence, it would strip away the statutory right of refusal. In Hill v. State, 366 So.2d 296
(Ala.Crim.App. 1978), affirmed, 366 So.2d 318 (Ala. 1979), this court addressed the exact question raised by appellant. Hill
dealt with Title 36, § 154 (c), Code of Alabama 1940 (Recomp. 1958) (Supp. 1973), which is substantially the same as our present statute. In Hill it was held that the provision "does not grant accused person the `right' to refuse to submit to chemical testing." Id. at 302. The Alabama Supreme Court stated "it seems that the act does not contemplate a per se right of refusal, rather this acquiescence in refusal is in the posture of avoiding potential violent conflict." Id. at 323. The Court further held "that the refusal to submit to a chemical test for intoxication is not a compelled testimonal communication and the admission of evidence of refusal and comment thereon does not violate the accused's privilege against self-incrimination." Id. at 325. Appellant's contentions are therefore without merit.
 II
Appellant contends that the court erred in admitting into evidence certified copies of the P.E.I. log sheet. It is argued that the State failed to lay the proper predicate in order to establish the log sheets as a business record. Appellant relies on Bush v. State, 474 So.2d 168, 170 (Ala. 1985), where the court held that testimony of the P.E.I. log sheet being notarized and kept with the P.E.I. machine at all times does not sufficiently establish that the record was made and kept in the regular course of business. The court noted that the officer did not testify that the log was certified or had been made regularly in the course of business. Id. The court citedSalotti v. Seaboard Coast Line R.R., 293 Ala. 1, 299 So.2d 695
(1974) as authority for laying the proper predicate. Salotti,293 Ala. at 20, 299 So.2d 695, requires:
 "(1) that it be shown that the entry was made as a memorandum or record of an act, transaction, occurrence, or event; (2) that the entry was made in the regular course of business; and (3) that it was the regular course of the business to make such memorandum or record at the time of such act, transaction, occurrence, or event, or within a reasonable time thereafter."
In the case sub judice Ventress testified that the log sheets were notarized copies, which were kept in the custody of Ms. Rebecca Fowee. Ms. Fowee notarized the copies. The log sheet is kept with the P.E.I. machine at all times as required by the State of Alabama, which the City of Troy complies with; that Ventress had been present on occasions when the machine had been calibrated and the log sheet indicated when the machine had been checked. The log sheet also contained the name of each person tested, the test number, the date, time, operator's name, and witnesses.
The log sheet was properly admitted into evidence as a business record. The requirements expressed in Salotti were sufficiently proven to qualify the log sheet as a business record, although this proof was scattered throughout the record.
 III
Appellant next argues that the trial court erred in admitting the P.E.I. test results because the operator of the P.E.I. test, Vance Ventress, did not observe appellant twenty minutes before administering the test, as required by the State Board of Health. No cases have been cited by appellant or appellee in this regard.
In order for P.E.I. test results to be admissible, the State is required to show, among other things, that the test was performed according to methods approved by the State Board of Health. Ala. Code § 32-5A-194 (a)(1), (1975); Bush v. City ofTroy, 474 So.2d 168 (Ala. 1985). The procedures and method for administering a P.E.I. test are set forth in the Alabama Department of Public Health form ADPH-F-A-41/Rev. 9-82, which was introduced into evidence at trial. This form is designated as "PHOTO-ELECTRIC INTOXIMETER *Page 466 
OPERATING RECORD," which Ventress stated he followed while administering the test. Item 12 of this form states "Subject under observation 20 minutes or more." Item 12 does not require the operator to observe the subject personally for 20 minutes; only that the subject be under observation for 20 minutes. The warning at the top of the form states:
 "WARNING: Subject must be under observation by the arresting officer and/or operator for a period of twenty minutes before the test is administered." [Emphasis added.]
Ventress testified that he observed appellant for ten minutes prior to administering the P.E.I. test. Edwards testified that he observed appellant thirty minutes, from the time he stopped appellant until he was taken to the police station and turned over to Ventress. Edwards delivered appellant to Ventress, and shortly thereafter Edwards "walked out" of the operating room, and out of appellant's presence. When Edwards returned, appellant was blowing into the machine at Ventress's direction. Ventress testified that appellant remained in his presence for ten minutes, and he ascertained from Edwards that Edwards had observed appellant for twenty minutes. The testimony of Edwards and Ventress clearly establishes that appellant was under observation for at least thirty minutes prior to testing. The requirements of item 12 were met.
 IV
Appellant next contends that he was denied his statutory right to an independent chemical test for the presence of alcohol and such denial constitutes reversible error as a denial of due process.
When appellant was arrested for D.U.I. on August 19, 1984, he refused to take the P.E.I. test. Appellant's father, Mr. Joe Titus Gibson, testified that he was at the police station shortly after appellant was arrested. Mr. Gibson offered to transport and pay for an independent blood test. This request was denied by police authorities, who told him an independent test was not allowed if the subject refused to take the P.E.I. test. Ventress testified, as did Edwards, that they were instructed to allow no additional tests if the subject refused to take the P.E.I. test. No cases have been cited by appellant or appellee for this contention. The question we must address is whether appellant had the right to have an independent blood alcohol test administered when he refused to take the blood alcohol test authorized by the State. We answer in the negative.
The admissibility of chemical tests as evidence of the amount of alcohol or controlled substances in a person's blood is set forth in § 32-5A-194, Code of Alabama (1975). This provision states:
 "(a) Upon the trial of any civil, criminal or quasi-criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual control of a vehicle while under the influence of alcohol or controlled substance, evidence of the amount of alcohol or controlled substance in a person's blood at the alleged time, as determined by a chemical analysis of the person's blood, urine, breath or other bodily substance, shall be admissible. When such chemical test is made the following provisions shall apply:
". . .
 "(3) The person tested may at his own expense have a physician, or a qualified technician, registered nurse or other qualified person of his own choosing administering a chemical test or tests in addition to any administered at the discretion of a law enforcement officer. The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer."
We note that paragraph (a) specifically states that "Where such a chemical test is made the following provisions shall apply." With the exception of sub-paragraph (3), it is obvious that the other sub-paragraphs *Page 467 
would not apply if the test were refused. Only sub-paragraph (3) could have any effect if a test were not administered by the police authorities, because it is the only sub-paragraph which does not directly relate to the test administered by the authorities. This sub-paragraph, however, also specifically states that the person tested may have a test of his own choosing "in addition to any administered" by law enforcement officers. In our view, the statute clearly states that the person who is arrested and tested may have a test of his own choosing after he has submitted to the tests directed by the law enforcement officer. Paragraph (a) clearly predicates the applicability of sub-paragraphs (1) through (5) upon the premise that the accused submit to a chemical test. Sub-paragraph (3) uses the words "in addition to," which clearly implies that the accused has submitted to a chemical test already.
In Hill v. Otte, 258 Ind. 421, 281 N.E.2d 811 (1972), the Supreme Court of Indiana was faced with the same question we address here. The statute in question was very similar to §32-5A-194 (a)(3). 281 N.E.2d at 812. The court in Hill v. Otte, 281 N.E.2d at 814, stated:
 "The language of the above quoted statute is clear and unambiguous that the additional tests are available to a defendant who submits to a breathalyzer test. After so submitting to a test, the accused person is under the statute permitted a cross check by a physician, registered nurse or medical technician of his own choosing. There is nothing in the language of the statute which indicates that such tests are to be given in lieu of the breathalyzer test required by the statute. When the appellee chose to refuse the breathalyzer test, he was not entitled to the additional tests called for in the statute and was subject to the penalty of having his driver's license revoked for one year."
See also McGuire v. Jackson County, 548 S.W.2d 272 (Kan. 1977). As in Hill v. Otte, the refusal to take a chemical test for alcohol in Alabama would subject an accused to having his driver's license revoked for specified periods. See § 32-5-192
(c).
We agree with the rationale expressed in Hill v. Otte, supra. The purpose of allowing an accused to obtain an additional test is to provide him a means of "cross checking" the state's test. This second test is clearly in addition to, and not in lieu of, the test administered by law enforcement officers. We therefore hold that § 32-5A-194 (a)(3) requires an accused to first submit to a chemical test properly directed by the arresting officer prior to the taking of additional tests at his own request. Appellant's contention that § 32-5A-194 (a)(3) creates a statutory right to an independent chemical test, regardless of whether he has taken the test directed by law enforcement officers, is without merit.
 V
In his opening statements the prosecutor told the jury that appellant had been given a P.E.I. test and "he was shown to have an alcohol content in his breath of .12." The defense objected on the ground that "the proper predicate has not been laid to sustain that." The trial court sustained the objection, but failed to admonish the jury after being requested to do so by the appellant. Appellant argues that the trial court committed reversible error in not admonishing the jury.
During the State's case in chief, the proper predicate for admission of the P.E.I. test results were established, and these results were allowed into evidence. Any possible error which may have resulted from the prosecution's opening statement was eradicated by the State's subsequent proof of this fact. No error harmful to appellant occurred. See Kendrickv. State, 356 So.2d 1222 (Ala.Crim.App. 1977); Pierce v. State,38 Ala. App. 97, 77 So.2d 507, cert. denied, 262 Ala. 702,77 So.2d 512 (1954).
Based on the foregoing this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 860