Gregg HAMILTON, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

No. A–4913.

Court of Appeals of Alaska.

Aug. 5, 1994.

Michael B. Logue, Gorton & Associates, Anchorage, for appellant.

Tracy Gellert, Asst. Mun. Prosecutor, and Richard L. McVeigh, Mun. Atty., Anchorage, for appellee.

Before BRYNER, C.J., MANNHEIMER, J., and ANDREWS, Superior Court Judge.*

*OPINION*

MANNHEIMER, Judge.

Gregg Hamilton appeals his conviction under Anchorage Municipal Code § 9.28.022 for refusing to submit to a breath test after he was arrested for driving while intoxicated. Hamilton argues that his refusal to take a breath test should be excused because he volunteered to take a blood test.

The parties agree concerning the facts of the case. Anchorage Police Officer Patrick Rider arrested Hamilton for driving while intoxicated and transported him to the police station. At the station, Rider asked Hamilton to submit to a chemical test of his breath on the Intoximeter 3000 machine. While Rider repeatedly instructed Hamilton on how to blow a sample of breath into the machine, Hamilton made three or four purported attempts to take the breath test. Each time, Hamilton failed to blow a sufficient volume of air into the Intoximeter to conduct the test.

When Rider accused Hamilton of attempting to avoid the test, Hamilton protested that he was making good-faith efforts to take the breath test—that his inability to blow into the machine was attributable to the fact that he had had half of a lung surgically removed. Despite Hamilton's explanation, Rider suspected that he was being "hoodwinked" and that Hamilton's ostensible attempts to take the breath test were not sincere. When Rider observed Hamilton's attempts closely,

---

* Sitting by assignment of the chief justice made pursuant to Article IV, Section 16 of the Alaska Constitution.

he saw that Hamilton was blowing around the tube instead of directly into it; on one occasion, it appeared to Rider that Hamilton was not blowing at all. After Hamilton had blown into the machine a total of nine times over a period of forty-five minutes without success, Rider announced that he was charging Hamilton with the crime of refusal.

Hamilton was charged both with driving while intoxicated and refusing to take the breath test. Before trial, Hamilton asked the district court to dismiss both charges; he argued that he had been denied due process of law (specifically, the right to gather or preserve exculpatory evidence) when Rider refused to transport him to the hospital for a blood test. District Court Judge Michael L. Wolverton granted Hamilton's motion with respect to the driving while intoxicated charge.[1] However, Judge Wolverton declined to dismiss the breath test refusal charge.

Hamilton went to trial on the refusal charge. The jury convicted him, finding beyond a reasonable doubt that Hamilton had had the physical ability to take the breath test and that his purported attempts to take the test had been in bad faith.

On appeal, Hamilton renews his argument that the district court should have dismissed the refusal charge. Hamilton points out that the legislature's main motive in enacting the breath test refusal statute was to convince arrested motorists to supply the government with physical evidence of the amount of alcohol in their blood stream. Hamilton contends that, even though he willfully refused to take the breath test, the government could have obtained the physical evidence it sought by accepting Hamilton's offer to submit to a blood test. Thus, Hamilton concludes, his offer to take a blood test cured his refusal to take the breath test, and the district court should have dismissed the charge.

Anchorage Municipal Code § 9.28.021–A and its state counterpart, AS 28.35.031(a),

commonly known as "implied consent" statutes, both declare that a motorist arrested for driving while intoxicated "shall be considered to have given consent to a chemical test or tests *of his or her breath* for the purpose of determining the alcoholic content of his or her blood or breath". (The state statute uses "person's" for "his or her".) Under Anchorage Municipal Code § 9.28.022–C and its state counterpart, AS 28.35.032(f), a motorist who refuses to submit to this prescribed breath test commits a crime. Both laws declare that an arrested motorist is guilty of a misdemeanor if he or she refuses "to submit to the chemical test *of breath*" authorized by the corresponding implied consent statute.

Thus, the municipal ordinances defining Hamilton's offense clearly specify that Hamilton was obliged to take a breath test (as opposed to some other form of chemical test). It was Hamilton's refusal to submit to the statutorily specified breath test that formed the basis of his conviction.

In his brief to this court, Hamilton argues that it is fundamentally unfair to ask a motorist with impaired lung function to take a breath test, then prosecute him for failing to provide a breath sample that was beyond his physical capacity, when all the while the motorist was freely volunteering to take a blood test. This argument has considerable force, but it does not speak to the facts of Hamilton's case. The jury found Hamilton guilty of refusing to take the breath test. That is, the jury found (beyond a reasonable doubt) that Hamilton's claimed inability to take the breath test was subterfuge: that Hamilton did in fact have the physical capacity to take the test, and that his purported attempts to blow air into the machine failed because he was not making a good faith effort.[2]

In light of the jury's verdict (which Hamilton does not challenge), Hamilton's argument reduces to the claim that the due process clause forbids the legislature from requiring motorists to submit to any particular form of

---

1. The correctness of this ruling is not before us.

2. The jury was instructed that, to find Hamilton guilty of refusing to submit to a breath test, they had to be convinced that Hamilton "did knowingly refuse to submit to a chemical test". Ham-

ilton does not claim that the instructions allowed the jury to convict him of an involuntary "refusal" to take the breath test (to find him guilty even though they believed he made good-faith efforts to take the breath test).

chemical testing. That is, Hamilton concedes that the legislature can make arrested motorists submit to a chemical test, but he contends that the motorists retain the ultimate power to decide what test that will be.

We rejected an analogous argument in *Anchorage v. Ray*, 854 P.2d 740 (Alaska App. 1993). In *Ray*, the defendant was arrested after he injured a pedestrian while driving in a state of intoxication. Over Ray's protests, the police took him to a hospital for a blood test. Ray argued that the police were required to seek his consent to a breath test first, and that the police could not proceed with a blood test unless and until he refused a breath test. We concluded that the governing statute permitted the police to conduct a blood test regardless of a motorist's wish to take another test:

> The legislature may, as a matter of policy, order one test given in preference to the other. AS 28.35.032(a) establishes a preference for the breath test in non-injury drunk driving arrests, but AS 28.35.035(a) does not mandate the same preference when an intoxicated driver has caused injury or death.

*Ray*, 854 P.2d at 750.

Hamilton's case presents the converse situation: an arrested motorist's ostensible offer to take a test that would be more physically intrusive than the breath test mandated by law. The controlling legal principle is, however, the same: the legislature (or, here, the municipal assembly) is empowered to specify the chemical test motorists must take; the due process clause does not confer on motorists the right to control or dictate the form of chemical testing. This is the apparently unanimous view of the courts that have considered similar challenges.

In *McGuire v. Jackson County Prosecuting Attorney*, 548 S.W.2d 272 (Mo.App.1977), the arrested motorist refused the statutorily required breath test but offered to take a blood test. When his license was revoked because he had refused the breath test, he argued that he had been denied due process, since he had been willing to take another form of test. The court disagreed:

> [C]hemical tests other than the breathalizer may be taken by [the motorist] to use as a cross-check against the breath test. But a person has no right to insist on an officer procuring any test other than the breath test. Once a person has refused to take the breath test, the offer to take any other test can have no bearing on the revocation of [the person's] license.

*McGuire*, 548 S.W.2d at 276. *Accord, Smith v. State Registrar of Motor Vehicles*, 40 Ohio App.2d 208, 318 N.E.2d 431 (1974).

Other courts agree that, under implied consent laws similar to Alaska's, an arrested motorist does not have the right to insist on other forms of chemical testing until he or she has first complied with the statutory duty to submit to a breath test. *See Greenwood v. Department of Motor Vehicles*, 13 Wash.App. 624, 536 P.2d 644 (1975); *Hill v. Otte*, 258 Ind. 421, 281 N.E.2d 811 (1972). *See also Litts v. Melton*, 57 A.D.2d 1027, 395 N.Y.S.2d 264 (1977) (an arrested driver "cannot impose or dictate the conditions or the manner in which [the chemical] test shall be administered"). And, in general, *see* Debra T. Landis, Annotation, "Request for Prior Administration of Additional Test as Constituting Refusal to Submit to Chemical Sobriety Test under Implied Consent Law", 98 A.L.R.3d 572 (1980 & 1993 Supp.).

Hamilton urges that the government has no real interest in the form of chemical test, since the result of a blood test would assumedly be just as valid as the result of a breath test. However, the government does have an interest in the orderly and expeditious processing of DWI arrestees, in discouraging undue delay in testing an arrested motorist's body for alcohol content, and in having arresting police officers return as quickly as possible to their patrol duties. These interests are advanced by having motorists submit to breath tests at the police station rather than demanding transport to a medical facility for a blood test. While such governmental interests may not be "compelling", they need not be. No fundamental interest of the motorist is at stake; the motorist has no fundamental right to choose the

form of the chemical test. *Anchorage v. Ray,* 854 P.2d at 749.

The judgement of the district court is AFFIRMED.

COATS, J., not participating.