Richard A. MATTOX, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9949.

Court of Appeals of Alaska.

Aug. 22, 2008.

---

Linda K. Wilson, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

Richard A. Mattox was convicted of felony refusal to submit to a chemical test.[1] He asks this court to reverse his conviction, arguing that there was insufficient evidence that he understood he was required to submit to a breath test to support his conviction for refusal. Having reviewed the record, we conclude there was enough evidence for a fair-minded juror to find that Mattox knew or should have known of his legal duty to submit to a breath test.

Mattox also argues that his right to due process was violated in two ways: first, because the officer who arrested him for driving while under the influence did not explain that he would be charged with a crime if he refused to submit to a breath test, even if he offered a blood test as an alternative; and, second, because the superior court did not instruct the jury that the officer had a duty to explain this to him. We reject both claims. Mattox never argued in superior court that the officer violated his due process rights, so he has not preserved this claim. And to the extent Mattox preserved his attack on the superior court's jury instructions, we find no error. We therefore affirm Mattox's conviction.

*Facts and proceedings*

Just before noon on September 4, 2006, Kenai Police Officer Jay Sjogren was dispatched to a residence to investigate the report of an assault. Dispatch told Officer Sjogren that the suspect had driven away in a green minivan. As Officer Sjogren responded to the report, he saw a green minivan pull into a nearby driveway. Officer Sjogren saw the driver, later identified as Mattox, get out of the van and stumble and stagger to the front door. Officer Sjogren approached Mattox and tried to speak with him, but Mattox ignored him. As Mattox walked by, Officer Sjogren noticed he smelled of alcohol.

After interviewing the man who reported the assault, Officer Sjogren decided to focus his investigation on Mattox because he be-

1.  AS 28.35.030(n).

lieved Mattox had been driving while under the influence. Officer Sjogren asked Mattox to perform field sobriety tests, but Mattox refused. Officer Sjogren then arrested Mattox and transported him to Wildwood Pretrial Facility for a breath test. During the observation period preceding the breath test, Officer Sjogren read Mattox the implied consent warning informing him that he was being asked to submit to a chemical test of his breath and telling him that if he refused to take the test he would be charged with a crime. Mattox refused to sign the implied consent form. He also refused to submit to a breath test. Officer Sjogren gave Mattox several opportunities to change his mind, but Mattox stated very clearly that he would not provide a breath sample. He did, however, say, "Take my blood. Just take my blood." Officer Sjogren did not respond to this statement because he planned to read Mattox the form advising him of his right to an independent chemical test. After Officer Sjogren read the form, Mattox declined the offer of an independent test.

Mattox was charged with felony driving while under the influence,[2] felony refusal to submit to a chemical test,[3] and driving while license revoked.[4] In a jury trial before Superior Court Judge Harold M. Brown, Mattox was convicted of all three offenses. He appeals his conviction for refusal to submit to a chemical test.

*There was sufficient evidence to convict Mattox of refusal*

■ Mattox argues that his refusal conviction was supported by insufficient evidence that he understood his legal duty to submit to a breath test.

In ruling on a claim that there was insufficient evidence to support a conviction, we must view all the evidence and the inferences from that evidence in the light most favorable to the jury's verdict.[5] The question is whether, viewing the evidence in this light, there was enough relevant evidence for a fair-minded juror exercising reasonable judgment to find that the State met its burden of proving guilt beyond a reasonable doubt.[6]

At trial, Officer Sjogren testified that he saw Mattox pull a green minivan into a driveway, get out of the van, and stagger and stumble to the front door of the residence. When Officer Sjogren contacted Mattox, he observed that Mattox smelled of alcohol. Mattox refused to perform field sobriety tests. Officer Sjogren then arrested him and transported him to jail for a breath test. At the jail, Officer Sjogren read Mattox the implied consent warning informing him of his legal duty to submit to a breath test. That warning provided in part:

> You are under arrest for Operating or Driving a Motor Vehicle Under the Influence (DUI). You are being asked to submit to a chemical test of your breath to measure the alcoholic content. Refusal to submit to a chemical test can be either a class A Misdemeanor or a class C Felony.
>
> . . .
>
> Refusal to submit to a chemical test may be used against you in a civil or criminal action or proceeding arising out of an act alleged to have been committed while operating the motor vehicle. Refusal to Submit to a Chemical Test is a crime that is separate from the crime of Driving Under the Influence.

Mattox would not sign the implied consent form. He also refused to submit to a breath test, even though Officer Sjogren gave him several opportunities to comply.

A recording of this contact was played to the jury. On the recording, in addition to the implied consent warning recounted above, Officer Sjogren stated: "The type of test you are requested to take is a breath test." He also said: "I'm asking you to take a breath test. You don't have to, that's your right." Mattox at first would not answer, but eventually he said: "No, no, no. I will

---

**2.** AS 28.35.030(n).

**3.** AS 28.35.032(p).

**4.** AS 28.15.291(a)(1).

**5.** *Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981); *Brown v. State,* 693 P.2d 324, 329 (Alaska App.1984).

**6.** *Dorman,* 622 P.2d at 453; *Collins v. State,* 977 P.2d 741, 747 (Alaska App.1999).

not do that. I will not.... Take my blood. Just take my blood." After concluding that Mattox had refused the breath test, Officer Sjogren advised him of his right to an independent chemical test of his blood. When he advised Mattox of this right, he reiterated: "You are refusing a breath test, right?" Mattox did not answer, but instead complained that Officer Sjogren had arrested him on the porch, on private property. Officer Sjogren eventually concluded that Mattox had also refused the offer of an independent chemical test.

Mattox argues that this evidence was insufficient to convict him of refusal because he said to Officer Sjogren, "Take my blood. Just take my blood." But the jury heard evidence that Mattox refused to perform field sobriety tests, refused to sign the implied consent form, refused several times to submit to a breath test, and refused the opportunity for an independent chemical test. Given this evidence, a fair-minded juror could reasonably conclude that Mattox's statement "take my blood" did not demonstrate he was confused about his legal duty to submit to a breath test, but rather was evidence of his continued obstreperousness. We conclude that there was sufficient evidence to support Mattox's conviction for refusal to submit to a chemical test.

*Mattox did not preserve his claim that Officer Sjogren violated his due process rights*

■ Mattox argues that his due process rights were violated because Officer Sjogren did not give him adequate notice that he would be charged with refusal if he refused to take a breath test, even if he offered to take a blood test instead.

In superior court, Mattox did not argue, in a pretrial motion or during trial, that his due process rights had been violated by Officer Sjogren's conduct, and the superior court did not rule on this issue. Mattox instead elected to argue to the jury that he should be

acquitted of refusal because his statement "take my blood" was an offer to submit to a chemical test. Because Mattox never argued in superior court that his due process rights were violated, he did not preserve this claim for appeal.[7]

■ Nor has Mattox shown (or even argued) that the superior court committed plain error by failing to find a due process violation *sua sponte*. This court will not find plain error unless the error "affects a substantive right and is obviously prejudicial." [8] The jury was instructed that it could not convict Mattox unless he knew or should have known that he had a legal duty to submit to a breath test.[9] Thus, the jury must have found that Mattox had enough notice of his legal duty to submit to a breath test to be convicted of refusal, even though Officer Sjogren did not explain to Mattox that he could not satisfy this legal duty by offering to submit to a blood test.

*The court did not err in instructing the jury*

Mattox next challenges the superior court's responses to several questions the jury posed during deliberations.

The jury's first question read:

Does the law state that a blood test can be given instead of a breath test?

The court responded:

The law does not give the defendant an option. The law requires submission to a test of the person's breath by an approved[,] certified testing device. The law permits the defendant to request an independent blood test.

The court also addressed another, related jury question:

[In] Instruction # 6 [listing the elements of refusal], the term "Chemical Test of Breath" is not used in [elements] # 5, 6, & 7. Can we get you to clarify if [the] "chemi-

7. *See Mahan v. State,* 51 P.3d 962, 966 (Alaska App.2002) ("To preserve an issue for appeal, an appellant must obtain an adverse ruling.").

8. *Dorman,* 622 P.2d at 457 (citing Alaska R.Crim. P. 47(b)).

9. *See Yang v. State,* 107 P.3d 302, 309–11 (Alaska App.2005); *Brown v. State,* 739 P.2d 182, 184–86 (Alaska App.1987).

cal test" [language used in elements # 5, 6, & 7] means "Chemical Test of Breath?"

The court instructed the jury that the references to a "chemical test" in the jury instruction "means chemical test of breath."

Mattox argues that the statute defining the crime of refusal permits a blood test to be offered in lieu of a breath test and that the court's responses to these jury questions were wrong. But we rejected this claim in *Hamilton v. Anchorage*.[10] Hamilton argued that his refusal conviction should be dismissed because even if he wilfully refused to take a breath test, his offer to take a blood test cured that refusal.[11] In rejecting that claim, this court explained that the municipal ordinance Hamilton had been charged with violating obliged him to take a breath test, as opposed to some other chemical test.[12] This court noted that the state refusal statute, AS 28.35.032(f), was identical in relevant respects.[13] This court went on to rule, in line with other courts that had considered this issue, that "the due process clause does not confer on motorists the right to control or dictate the form of chemical testing." [14]

Mattox distinguishes his case from *Hamilton*, arguing that the relevant statutory language has changed. At the time of Hamilton's offense, the refusal statute, AS 28.35.032(f), made it a crime to "[refuse] to submit to the chemical test *of breath* authorized by ... AS 28.35.031(a)", "the implied consent statute."[15] The current provision, which was in effect at the time of Mattox's offense, makes it a crime to "[refuse] to submit to a chemical test authorized by ... AS 28.35.031(a) or (g)." [16] Thus, Mattox is correct that the legislature dropped the express reference to "breath" from the refusal statute.

But the legislature's reason for dropping this language does not support Mattox's claim. The current statute makes it a crime to refuse a chemical test authorized under *either* subsection (a) or (g) of the implied consent statute. The statute at issue in *Hamilton* only made it a crime to refuse a test under subsection (a) (subsection (g) did not exist at that time).[17] Subsection (a) authorizes a *breath* test of any person lawfully arrested for driving while under the influence.[18] Subsection (g) authorizes a *breath and blood* test for any person who is involved in a motor vehicle accident that causes serious physical injury or death.[19] Thus, the statute now makes it a crime to refuse a breath or blood test, depending on whether subsection (a) or (g) applies in the circumstances of the case. Therefore, to the extent that Mattox is arguing that the legislature dropped the "of breath" language from the refusal statute because it wanted to overrule *Hamilton* and give motorists the option of providing a blood test instead, that claim is without merit. The legislature dropped the "of breath" language because it added subsection (g) and now, depending on the circumstances of the case, a defendant may be prosecuted for refusal to submit to either a breath or blood test, or both.[20]

Mattox also raises a claim that was not addressed in *Hamilton*: that he had a due process right under the facts of his case to be told before deciding whether to submit to a breath test that he had no right to elect the type of test. But, as discussed earlier, Mattox did not argue in superior court that he had this due process right; nor did he ask Judge Brown to instruct the jury that Officer Sjogren had a duty to explain that he would be charged with refusal despite his purported offer of a blood test.

10. 878 P.2d 653 (Alaska App.1994).

11. *Id.* at 654.

12. *Id.*

13. *Id.*

14. *Id.* at 655.

15. Former AS 28.35.032(f) (pre-August 22, 1994, version).

16. AS 28.35.032(f).

17. *See* ch. 55, § 7, SLA 1994.

18. AS 28.35.031(a).

19. AS 28.35.031(g).

20. *See* ch. 55, §§ 8–11, SLA 1994.

At trial, during discussion about how to respond to the jury's questions, Mattox did state that Officer Sjogren's conduct "probably" gave rise to a duty to explain to Mattox that he could not avoid a refusal charge by offering to submit to a blood test:

> *Defense counsel:* Well, maybe the—maybe I should have raised this earlier and maybe it's still important. And I think it is still important. Because the point is, once a person asks a question and says, take my blood instead, it seems to me there's probably an obligation to say, I'm not going to do that unless you blow first.
>
> *Court:* Well, you've made that argument to the jury.
>
> *Defense counsel:* Right, and the point is, he didn't refuse. He said, you can take a chemical test. And, you know, he wasn't told, you don't have that option, you got to do breath, you can't do blood. But he said, take it.

In the above discussion, when the court characterized Mattox's argument as an argument for the jury, Mattox did not correct the court or argue that he was raising a legal issue—that is, a due process claim that he wanted the court to resolve as a matter of law. Nor did he ask the court to instruct the jury that Officer Sjogren had a duty to make clear to Mattox that he could not avoid a refusal charge by submitting to a blood test. Mattox therefore did not preserve this claim.[21] And he has not shown plain error.[22] The jury heard evidence and argument that Officer Sjogren failed to explain to Mattox that he would be charged with refusal even if he offered to submit to a blood test instead of a breath test. The jury nevertheless found that Mattox had enough notice of his duty to submit to a breath test to be guilty of the crime of refusal.

*Conclusion*

We AFFIRM Mattox's conviction.

---

**21.** *See Mahan,* 51 P.3d at 966.

**22.** *See* Alaska R.Crim. P. 47(b).