WISE, Justice.
This Court granted Derek Jermaine Baker’s petition for a writ of certiorari to review the Court of Criminal Appeals’ unpublished memorandum affirming Baker’s conviction and sentence for trafficking in marijuana. See Baker v. State (No. CR-11-0267, December 17, 2012), — So.3d -(Ala.Crim.App.2012) (table). For the reasons set forth below, we reverse and remand.

*1286
Facts and Procedural History

On February 9, 2010, Sgt. Mike Cowart, the supervisor of the Decatur Police Department’s Anti-Crime Unit, was conducting surveillance on a house on Blaine Drive Southwest in Decatur after receiving a citizen’s complaint that there was drug activity at that house. While Sgt. Cowart was conducting surveillance, a blue Ford Expedition sport-utility vehicle arrived at the house. A black male got out of the vehicle, retrieved a black object from the vehicle, and then entered the house with the black object. A few minutes later, Sgt. Cowart saw the man come out of the house carrying what appeared to be the same black object. The man then put the black object back inside the vehicle and drove away. As the subject was driving away, Cowart was able to see the driver of the vehicle and to obtain a tag number for the vehicle.
Sgt. Cowart radioed Officers Josh Sloan and Jamie Hammons, who were members of the Anti-Crime Unit. Officers Sloan and Hammons were partners and were both in the same patrol vehicle. Sgt. Cowart told Officers Sloan and Hammons about the activity he had witnessed. He also asked them to follow the vehicle and to stop it if the driver committed a traffic infraction. Subsequently, Sgt. Cowart and Officers Sloan and Hammons followed the vehicle in separate vehicles. Sgt. Cowart testified that, as the driver was turning off Tammy Street and onto Sandlin Road, he saw something come out of the passenger’s side window of the vehicle. Officer Sloan also testified that, as the vehicle was turning, he saw what he believed to be a black bag being thrown from the passenger’s side of the vehicle. Sgt. Cowart stopped and recovered a black garbage bag from the road. Sgt. Cowart testified that the black bag had burst open; that there was a clear plastic bag of marijuana in the roadway; and that there were four other plastic bags of marijuana inside the black bag.
Officers Sloan and Hammons subsequently stopped the vehicle. Baker was the driver of the vehicle and was the only person in the vehicle. Sgt. Cowart, who arrived at the scene after Officers Sloan and Hammons, and Officers Hammons and Sloan all testified that they could smell marijuana in the vehicle. The State also presented evidence indicating that law-enforcement officers subsequently recovered a small amount of what appeared to be marijuana from Baker’s person and a small amount of what appeared to be loose marijuana from the center console of the vehicle.[1] Forensic testing indicated that the material in the plastic bags that were inside the black garbage bag was marijuana and weighed almost five pounds.
Baker denied that he had been to the house on Blaine Drive Southwest or that he had been anywhere in that area on the day in question; denied that he had ever had any marijuana in the vehicle; and denied that he had thrown any marijuana out of the vehicle.
On February 25 and 28, 2011, Baker filed motions for discovery in which he requested that the district attorney make any controlled substance or substances material to the preparation of the defense available to him for analysis by an expert. The trial court denied Baker’s motions.
Baker was convicted of trafficking in cannabis, a violation of § 13A-12-231(l)a., Ala.Code 1975, and the trial court sentenced him to 10 years in prison. The *1287 Court of Criminal Appeals affirmed Baker’s conviction and sentence in an unpublished memorandum. Baker petitioned this Court for a writ of certiorari, and this Court granted certiorari review as to the question whether the Court of Criminal Appeals’ holding that the trial court did not exceed its discretion when it denied Baker’s motions seeking independent testing of the substance purported to be marijuana conflicts with this Court’s previous decision in Ex parte Harwell, 689 So.2d 1335 (Ala.1993).

Standard of Review

“Discovery matters are within the sound discretion of the trial court, and this Court will not reverse a trial court’s rulings on discovery issues unless there has been a clear abuse of discretion^[2]] Home Ins. Co. v. Rice, 585 So.2d 859 (Ala.1991). Further, this Court has held that, to be entitled to a reversal of a judgment for an abuse of discretion, the party claiming abuse must establish that it was prejudiced by the alleged abuse. See Valley Properties, Inc. v. Strahan, 565 So.2d 571, 583 (Ala.1990).”
Ex parte Harwell, 639 So.2d at 1336.

Discussion

Baker argues that the Court of Criminal Appeals erroneously held that the trial court did not exceed its discretion when it denied his motions seeking independent testing and evaluation of the substance purported to be marijuana. Specifically, Baker contends that the Court of Criminal Appeals’ decision conflicts -with this Court’s prior holding in Ex parte Harwell, supra. In its unpublished memorandum, the Court of Criminal Appeals concluded that Baker was required to demonstrate that he was prejudiced by the trial court’s denial of his motions for discovery but that he failed to do so; that, after reviewing the record, it could not say that Baker was prejudiced by the denial of his discovery motions; and that Baker did not establish that independent testing was necessary for him to present an effective defense.
Rule 16.1(c), Ala. R.Crim. P., provides, in pertinent part:
“Upon written request of the defendant, the prosecutor shall, within fourteen (14) days after the request has been filed in court as required by Rule 16.4(c), or within such shorter or longer period as may be ordered by the court, on motion, for good cause shown, permit the defendant to analyze, inspect, and copy or photograph books, papers, documents, photographs, tangible objects, controlled substances, buildings or places, or portions of any of these things, which are within the possession, custody, or control of the state/municipality and:
“(1) Which are material to the preparation of defendant’s defense....
“(2) Which are intended for use by the state/municipality as evidence at the trial; or
“(3) Which were obtained from or belong to the defendant.
“Upon motion of the state/municipality, the court shall impose such conditions'or qualifications as may be necessary to protect the chain of custody of evidence, or the prosecutor’s, law en *1288 forcement officer’s, or investigator’s work product, or to prevent loss or destruction of such documents or objects.”
(Emphasis added.)
In Ex parte Harwell, Harwell was indicted for reckless murder and first-degree assault based on a motor-vehicle accident. Both indictments alleged that, at the time Harwell caused the death of Judy B. Goodwin and caused injuries to Kenneth J. Goodwin, he was driving a motor vehicle while he was under the influence of alcohol. On October 10, 1991, Harwell sought production of a sample of his blood that was drawn after the accident for the purpose of having it independently tested. On November 15, 1991, the State had not yet complied with Harwell’s request for production, so he filed a second motion to obtain a sample of his blood. He also sought the State’s records regarding the analysis of his blood. The trial court denied the part of Harwell’s motion that related to the production of his blood sample. After the Court of Criminal Appeals affirmed Harwell’s convictions in an unpublished memorandum, this Court granted Harwell’s petition for certiorari review. In addressing Harwell’s argument, this Court stated:
“Harwell argues that the trial court abused its discretion by denying his motions to obtain a sample of his blood so that he could have it independently analyzed. He also argues that the trial court’s denial of his request prejudiced his rights to due process. He notes that this Court has held that a defendant has a right to obtain independent testing of controlled substances that were obtained from the defendant and that are in the custody and control of the State. Warren v. State, 292 Ala. 71, 288 So.2d 826 (1973). See also Sawyer v. State, 598 So.2d 1035 (Ala.Crim.App.), cert, denied, 506 U.S. 943, 113 S.Ct. 386. 121 L.Ed.2d 295 (1992); Gayle v. State, 591 So.2d 153 (Ala.Crim.App.1991); Jackson v. State, 560 So.2d 1100 (Ala.Crim.App.1989); Moton v. State, 524 So.2d 381 (Ala.Crim. App.1988); Ware v. State, 472 So.2d 447 (Ala.Crim.App.1985); Blair v. State, 453 So.2d 1092 (Ala.Crim.App.1984).
“In Warren, holding that due process requires that a defendant be allowed to obtain a sample of the controlled substances obtained from him, this Court stated:
“ ‘Impartiality and fairness require that the defendant be aided by all available processes of the court, when invoked, to enable him to test and question the authenticity of the State’s evidence against him. So where the contents of an allegedly prohibited substance [are] in issue and [are] to be offered against him, is it asking too much for the defendant, that he be allowed as much opportunity to determine the nature of the substance and its characteristics as has been afforded the State? We think not, and it is no answer to the question that the State’s expert witness is a skillful scientist and a creditable witness. To enable one to present his defense fully and effectively, the right of cross-examination, thorough and sifting, must'remain inviolate, and to enable the defendant to invoke this right, on motion, he should be furnished a sample of the allegedly prohibited substance that will be offered against him in the trial so that he can have its qualities researched by scientists of his choosing. We think that to deny him this right is to deny him due process, especially where his motion to produce was made well in advance of the trial so that it could have been ruled on by the comí without causing any undue delay in the trial.’
*1289 “292 Ala. at 75, 288 So.2d at 830. (Emphasis added.) Harwell argues that where, as here, his blood alcohol content is a critical element in the prosecution’s case against him, he has a right, similar to that of the defendant in Warren, to production of a sample of his blood for independent testing by a scientist of his choice.
“The State argues that the blood alcohol content of his blood sample is not a material element of the crime of reckless murder. However, it is well established that one’s blood alcohol content is a material element of the prosecution’s case for reckless murder based on a fatal motor vehicle wreck involving a drunk driver. See Nixon v. State, 268 Ala. 101, 105 So.2d 349 (1958) (noting that a defendant’s intoxication at the time of a fatal car wreck has been considered a significant, if not controlling, factor in a prosecution for reckless murder); Hyde v. State, 230 Ala. 243, 160 So. 237 (1935). Cf. Gwin v. State, 425 So.2d 500 (Ala. Crim.App.1982) (holding that the trial court did not err in refusing to require the State to produce the weapons and bullets for independent expert examination because that evidence was not critical to the defendant’s defense of self-defense), writ quashed, Ex parte Gwin, 425 So.2d 510 (Ala.1983). Blood alcohol content is also material to Harwell’s assault conviction based on Ala.Code 1975, § 13A-6-20(a)(5).
“The record reveals that when Har-well requested production of a blood sample the sample was in the custody and control of the State and was available for further testing. The technician who conducted the State’s analysis of the blood sample testified at trial that a sufficient amount of the blood sample was left to conduct an accurate blood alcohol test and that it had not yet spoiled. It follows that the State’s refusal to provide Harwell with the sample deprived him of any means of challenging the results of the State’s test through his own independent test. We believe the defendant’s analogy to testing controlled substances is well taken under these facts. Where a defendant makes a timely request, where the blood alcohol content of that sample is a material element of the charge, and where the defendant would be prejudiced by the denial of his motion for production of the blood sample for independent testing, due process requires that the State produce a sample of his blood for independent testing of its blood alcohol content.
[[Image here]]
“In Gibson v. City of Troy, [481 So.2d 463 (Ala.Crim.App.1985),] the court noted that ‘[t]he purpose of allowing an accused to obtain an additional test is to provide him a means of “cross checking” the state’s test.’ 481 So.2d at 467. Har-well was not allowed to ‘cross check’ the state’s test and was, thus, denied due process. Accordingly, the judgment of the Court of Criminal Appeals is due to be reversed as to both convictions and the case remanded for proceedings consistent with this opinion.”
639 So.2d at 1336-38.
Further, in Warren v. State, 292 Ala. 71, 75, 288 So.2d 826, 829-31 (1973), this Court stated:
“When a defendant pleads not guilty in a criminal ease, the State carries a heavy burden of proof to establish his guilt by the evidence before the jury, and the State’s burden should in no manner diminish the defendant’s right to test and question, by all legitimate methods, the weight and credibility of the State’s evidence against him at all stages of the trial. Impartiality and *1290 fairness require that the defendant be aided by all available processes of the court, when invoked, to enable him to test and question the authenticity of the State’s evidence against him. So where the contents of an allegedly prohibited substance [are] in issue and [are] to be offered against him, is it asking too much for the defendant, that he be allowed as much opportunity to determine the nature of the substance and its characteristics as has been afforded the State? We think not, and it is no answer to the question that the State’s expert witness is a skillful scientist and a creditable witness. To enable one to present his defense fully and effectively, the right of cross-examination, thorough and sifting, must remain inviolate, and to enable the defendant to invoke this right, on motion, he should be furnished a sample of the allegedly prohibited substance that will be offered against him in the trial so that he can have its qualities researched by scientists of his choosing. We think that to deny him this right is to deny him due process, especially where his motion to produce was made well in advance of the trial so that it could have been ruled on by the court without causing any undue delay in the trial.
[[Image here]]
“The truth vel non of the qualities of the substance is put in issue by the defendant’s plea of not guilty. All evidence as to that truth is the very essence of determining the guilt or innocence of the accused and should be sought. We think that the court erred in denying the defendant’s motions.
“The trial court may consider prescribing reasonable safeguards to protect the sample against any violation of its integrity during the course of its examination, if such is deemed necessary, by having the analysis conducted in the presence of the court’s representative or in any other reasonable manner.”
The State relies upon this Court’s previous decision in Dubose v. State, 662 So.2d 1189 (Ala.1995), and the Court of Criminal Appeals’ decision in Dill v. State, 600 So.2d 343 (Ala.Crim.App.1991), to support its contention that Baker was required to show that there was a particularized need for expert testing of the seized substance. However, in Dubose, this Court addressed the trial court’s denial of Dubose’s requests for funds to hire an expert witness. Additionally, Dill dealt with a situation where Dill argued that the trial court erred in not appointing a psychiatric expert. Neither of those cases addressed the issue whether the State should have produced a controlled substance for independent testing in a case where the defendant is charged with a controlled-substance offense.
However, in McLeod, v. State, 581 So.2d 1144 (Ala.Crim.App.1990), the Court of Criminal Appeals addressed McLeod’s denial of a request for funds to obtain independent testing of a controlled substance as follows:
“McLeod asserts that he was denied due process of law by the trial court’s denial of his request for funds to obtain independent testing of the cocaine.
“A ‘Motion for Independent Testing was filed by defense counsel Motley on March 27, 1989. This motion, which requested both a sample for testing and funds for such testing, was originally denied on April 14, 1989, as untimely. On April 17,1989, the trial court entered an order directing the State to furnish McLeod with a sample for independent testing to be conducted at McLeod’s expense. McLeod then filed a pro se re *1291 quest for funds for the testing. This request was denied on April 21, 1989.
“A defendant charged with a drug-related offense is entitled, under Rule 18.1(c), A.R. Cr. P. Temp., and upon proper motion, to a sample of the alleged controlled substance in order that he may obtain independent testing of the substance.[3] See Moton v. State, 524 So.2d 381 (Ala.Cr.App.1988); Ware v. State, 472 So.2d 447 (Ala.Cr.App. 1985). However, neither Moton nor Ware stands for the proposition that an indigent defendant is automatically entitled to funds for such testing. The defendant must demonstrate that there is a need for such testing in order to obtain funds therefor. See Tarver v. State, 500 So.2d 1232, 1245 (Ala.Cr. App.), affirmed, 500 So.2d 1256 (Ala. 1986), cert, denied, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987) (where defendant made no ‘showing of the need for a forensic expert’ to examine fingerprints on a beer can, he ‘was not unconstitutionally denied the assistance of experts’); Hold v. State, 485 So.2d 801, 803 (Ala.Cr.App.1986) (where defendant failed to make a showing of need for private investigator, trial court’s denial of defendant’s request for funds to hire same did not violate defendant’s due process rights). Cf. Caldwell v. Mississippi, 472 U.S. 320, 323 n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985) (where defendant’s request for appointment of a criminal investigator, fingerprint expert, and ballistics expert ‘offered little more than undeveloped assertions that the requested assistance would be beneficial,’ the Supreme Court found ‘no deprivation of due process’ in the trial court’s denial of the request).”
581 So.2d at 1149-50 (emphasis other than on “funds” added).
In his discovery motions, Baker requested that the seized substance in this case be made available for expert analysis. Additionally, Baker’s plea of not guilty put “[t]he truth vel non of the qualities of the substance” in issue. Warren, 292 Ala. at 77, 288 So.2d at 831. Therefore, pursuant to Rule 16.1(c), Ala. R.Crim. P., this Court’s holdings in Ex parte Harwell and Ex parte Warren, and the Alabama Court of Criminal Appeals’ holdings in McLeod; Gayle v. State, 591 So.2d 153, 155 (Ala. Crim.App.1991); Jackson v. State, 560 So.2d 1100 (Ala.Crim.App.1989); Moton v. State, 524 So.2d 381 (Ala.Crim.App.1988); and Ware v. State, 472 So.2d 447 (Ala. Crim.App.1985), Baker was entitled to production of the seized substance in this case for the purpose of having it independently tested. Further, based on these cases, the denial of the motion for production resulted in prejudice to Baker and violated his right to due process. Additionally, the record does not indicate that Baker ever requested funds for an expert to conduct the independent testing. Therefore, Baker was not required to demonstrate that there was a particularized need for such testing. Cf. McLeod, supra. Accordingly, the trial court exceeded its discretion when it denied Baker’s motions seeking independent testing and evaluation of the substance purported to be marijuana.
For these reasons, the Court of Criminal Appeals erred when it affirmed Baker’s conviction for trafficking in marijuana. Accordingly, we reverse the Court of Criminal Appeals’ judgment and remand this case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
*1292 MOORE, C.J., and STUART, BOLIN, PARKER, MAIN, and BRYAN, JJ., concur.

. The material that was obtained from Baker and from the center console of the vehicle was not submitted for forensic testing.

. "This Court now phrases the question in terms of whether a trial court 'exceeded' its discretion, rather than whether the trial court 'abused' its discretion. The standard of review remains the same. See Classroomdi-rect.com, LLC v. Draphix, LLC, 992 So.2d 692, 701 n. 1 (Ala.2008); Kyser v. Harrison, 908 So.2d 914 (Ala.2005); and Ex parte Family Dollar Stores of Alabama, Inc., 906 So.2d 892, 899 (Ala.2005).” CIT Commc’n Fin. Corp. v. McFadden, Lyon & Rouse, L.L.C., 37 So.3d 114, 121 n. 5 (Ala.2009).

. Rule 18.1(c), Ala. R.Crim. P. Temp., is now Rule 16.1(c), Ala. R.Crim. P.